**Jane DOE, etc., et al., Plaintiffs,**

v.

**Tyrone C. FAHNER, et al., Defendants.**

No. 81 L 2612.

United States District Court, N. D. Illinois, E. D.

June 8, 1981.

Lois J. Lipton, American Civil Liberties Union, Chicago, Ill., for plaintiffs.

John Dienner, Asst. State's Atty. for Cook County, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Jane Doe, as mother and next friend to Mary Doe and as grandmother and next

friend to Baby Boy Doe, has brought this individual and class action attacking the constitutionality of Ill.Rev.Stat. ch. 38, §§ 81–27, 81–28 and 81–31(a). Those sections of the Illinois Abortion Law treat the situation in which a live birth occurs during an attempted voluntary abortion.

After an emergency hearing when suit was initially filed, on May 9, 1981 this Court:

(1) certified classes of both plaintiffs[1] and defendants after hearing argument on the applicability of the criteria established by Fed.R.Civ.P. ("Rule") 23; and

(2) entered a ten-day temporary restraining order against enforcement of the statutes.

While the TRO was in effect the Court conducted a hearing on plaintiff's application for a preliminary injunction. Following the hearing the TRO was extended to May 29 to permit the Court to render its decision.

Before the TRO had expired and while the Court's opinion and decision were in preparation, plaintiffs' counsel informed the Court of the unfortunate death of Baby Boy Doe. That poses a serious question as to the continued existence of a justiciable controversy. There is of course no longer a possibility of juvenile court proceedings as to the child—the focal point of the challenged statutes and of plaintiffs' attack—so that the claim of the named plaintiffs is moot. Thus the threshold issue that must be dealt with is that of possible mootness of the class action aspect of this litigation.

■ Once certified, a class acquires an independent legal status separate from that of its named representative and the interest she asserts. *Sosna v. Iowa*, 419 U.S. 393, 399, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975). In *Sosna* and other cases the Supreme Court has established a three-step analysis for ascertaining the viability of a class action after the claim of the named representative becomes moot:

(1) It must be determined whether a "live controversy" remains between the unnamed class members and the defendants. *Sosna*, 419 U.S. at 401–02, 95 S.Ct. at 558. This is an Article III jurisdictional issue: the question whether a "case" or "controversy" still exists.

(2) It must be determined whether the remaining controversy is an appropriate one for passing on constitutional questions. This is a policy consideration usually, but not necessarily, controlled by the "capable of repetition, yet evading review" standard. *Id.* at 399–400, 95 S.Ct. at 557; *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 756 n.8, 96 S.Ct. 1251, 1260 n.8, 47 L.Ed.2d 444 (1976).

(3) It must be determined whether the named plaintiff can continue "fairly and adequately [to] protect the interests of the class" (the Rule 23(a) standard). *Sosna*, 419 U.S. at 403, 95 S.Ct. at 559.

■ Courts have not been forced to treat with the first step of the analysis in any depth. Typically there have been other existing and identifiable class members in the same situation as the named plaintiff. *See, e. g., Gerstein v. Pugh*, 420 U.S. 103, 110 n.11, 95 S.Ct. 854, 861 n.11, 43 L.Ed.2d 54 (1975) (class of pretrial detainees); *Sosna* (class of persons resident in Iowa for less than one year wishing to commence marriage dissolution actions). In contrast the plaintiff classes certified by this Court are prospective in nature, for there is no evidence of any now-living infant who has survived an attempted abortion. While it is clear that defendants continue to intend to enforce the challenged statutes if the situation again arises, every litigation requires *present* real adversaries to meet the need for Article III justiciability.

---

1. Two classes of plaintiffs were certified: all women giving birth to live children during abortion procedures and all children born during such procedures. Because of the then existence of one real plaintiff meeting each description and the potential of recurrence (as the Complaint alleged, "Because of the likelihood of future live births during an abortion procedure, [each] class...is infinite and joinder of all members is impracticable"), it was unnecessary to focus on the latter question alone. Now however that must be done in this opinion.

*Sosna* is perhaps the most instructive precedent on that point. There the District Court certified a class consisting of (419 U.S. at 397, 95 S.Ct. at 556):

those residents of the State of Iowa who have resided therein for a period of less than one year and who desire to initiate actions for dissolution of marriage or legal separation, and who are barred from doing so by the one-year durational residency requirement embodied in Sections 598.6 and 598.9 of the Code of Iowa.

When the named plaintiff's claim became moot the Court found a continuing live controversy because "it is clear that they [Iowa officials] will enforce it against those persons in the class that appellant sought to represent...." (419 U.S. at 400, 95 S.Ct. at 558).

True enough, the *Sosna* court found Article III satisfied without actually ascertaining whether any people residing within the state of Iowa for less than one year wanted to seek marital dissolutions. But the parties there had stipulated "that there were in the State of Iowa 'numerous people in the same situation as plaintiff'" (419 U.S. at 397, 95 S.Ct. at 556). Implicit in the Court's statement about Iowa's continuing readiness to enforce its statute was the concept that unnamed class members were *actively affected* by the challenged statute. Indeed that is the clear tenor of the Court's opinion (419 U.S. at 402, 95 S.Ct. at 558):

Our conclusion that this case is not moot in no way detracts from the firmly established requirement that the judicial power of Art. III courts extends only to "cases and controversies" specified in that Article. There must not only be a named plaintiff who has such a case or controversy at the time the complaint is filed, and at the time the class action is certified by the District Court pursuant to Rule 23, but there must be a live controversy at the time this Court reviews the case. *SEC v. Medical Committee for Human Rights* [404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560] *supra.* The controversy may exist, however, between

a named defendant and a member of the class represented by the named plaintiff, even though the claim of the named plaintiff has become moot.

In effect the very nature of the class affected by the statute compelled the conclusion as a matter of human experience that there were substantial numbers of real though unidentified class members at all times—a kind of judicial notice obviating the need for proof. *Gerstein* too reflected the same notion (420 U.S. at 111 n.11, 95 S.Ct. at 861 n.11):

Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain. The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case.

Most recently, in *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980), the Court spoke to the same effect:

It is clear that the controversy over the validity of the Parole Release Guidelines is still a "live" one between petitioners and at least some members of the class respondent seeks to represent. This is demonstrated by the fact that prisoners currently affected by the guidelines have moved to be substituted, or to intervene, as "named" respondents in this Court.

■ This Court's reading of *Sosna*, *Gerstein*, and *Geraghty* (and the same is true of all other class action mootness cases) is supported by fundamental principles of justiciability under Article III. At the core of federal courts' concern about mootness is their felt need to limit themselves "to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). No class that is entirely prospective in nature can adequately fulfill the adversary role necessary to present a "case" or "controversy" under Article III.[2] And the very nature of

---

2. Plaintiffs' *counsel* have pursued and continue to pursue their representation with great ability, diligence and vigor. But Article III is not satisfied by a case or controversy between lawyers—the test must be met by clients.

the problem posed by this case, dealing as it does with the rarity of a live birth during a voluntary abortion proceeding, precludes the kind of assumption about current class members that underpins the other cases finding a "live" controversy.

### Conclusion

This Court finds no present "case" or "controversy," as required by Article III, between the defendants on the one hand and either the named plaintiffs or the plaintiff classes on the other. Accordingly this action must be and is dismissed under Fed. R.Civ.P. 12(h)(3).