**WILLIAM S., et al., Plaintiffs,**

v.

**Donald GILL, et al., Defendants.**

**No. 81 C 3045.**

United States District Court,
N. D. Illinois, E. D.

March 31, 1982.

Brooke R. Whitted, Richard J. Aronson, Matthew Cohen, Canel, Aronson & Whitted, Chicago, Ill., for plaintiffs.

Paul Millichap, Asst. Atty. Gen., State of Illinois, Chicago, Ill., for state defendants.

Paul Millichap, Asst. Atty. Gen., Jeffrey Brown, Sp. Asst. Atty. Gen., State of Illinois, Chicago, Ill., for third-party defendants.

Ralph Miller, John M. Collins, Brydges, Riseborough, Morris, Franke & Miller, Chicago, Ill., for local school district defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

William S. ("William"), a minor child, by his mother and next friend Geraldine S. ("Geraldine"), has brought this class action against a number of state and local educational officials and entities.[1] William con-

---

1. "State defendants" are Donald G. Gill, Illinois Superintendent of Education, and Donald Muirhead, Chairman, Illinois State Board of Education. "Local defendants" are Barrington Community District 220; Clyde Slocum, Superintendent of District 220; and the Special Education District of Lake County.

tends he and other class members[2] are handicapped children entitled to an education paid for by defendants, including appropriate "related services" necessary to enable them to meet with success in school. William asserts defendants have refused to provide him those "related services," owing to a state policy of distinguishing between "educational" and "non-educational" costs and refusing to fund the latter. That refusal, William argues, violates:

(1) Illinois' obligations under two federal statutes, the Education for All Handicapped Children Act of 1975 ("EAHCA"), 20 U.S.C. §§ 1401–61, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794;

(2) William's right to equal protection of the laws under both the federal and state constitutions; and

(3) Illinois' own commitment to handicapped children in Article 14 of the Illinois School Code, Ill.Rev.Stat. ch. 122, ¶¶ 14–1.01—14–14.01.

Defendants have moved to dismiss the complaint on various grounds. In addition, the local school district defendants have filed a cross-claim against the State Board and its officials and a third-party claim against a number of state agencies implicated by William's claim for "related services."[3] In that respect, the State Board and its officials have moved to dismiss the cross-complaint, and the other state agencies providing "related services" have moved to dismiss the third-party complaint.

For the reasons contained in this memorandum opinion and order, all the motions to dismiss are denied.

*Facts*[4]

William is a nine year old suffering from severe multiple handicaps: moderate to profound bilateral hearing loss, mild to moderate functional mental retardation, and spastic quadriplegia affecting his left side. William suffers three to four grand mal seizures per day, though he is on medications that suppress, at least somewhat, the outward symptoms of the seizures.

In 1977 William was living with Geraldine within the jurisdiction of School District 25, Arlington Heights, Illinois. District 25 determined it could not provide a program appropriate to William's needs, as required by federal and state laws and regulations. Consequently William was placed at St. John's School for the Deaf in Milwaukee for the 1977–78 academic year at District 25's expense. When the placement at St. John's proved "highly successful" for William, the placement and District 25's funding continued for another year. During 1978 and early 1979 William made "considerable progress" at St. John's in the development of communication and self-help skills.

All went well until Geraldine moved from Arlington Heights to Barrington, Illinois, within Community Unit District 220 ("District 220"). In June 1979 District 220 told Geraldine it would not pay to continue William's placement at St. John's, so that William would have to attend a public school program.

During that summer William attended a summer school program operated by Special Education District of Lake County (SEDOL), a cooperative serving District 220 among others. William's residential attend-

**2.** Complaint Count I asserts a class action seeking declaratory and injunctive relief, costs, attorneys' fees, reimbursement for William's interim placement (described below) and $25,-000 in damages. Count II is an individual action against the same defendants, seeking judicial review of William's placement, costs, attorneys' fees, reimbursement for his interim placement and $500,000 in damages. William's dual claim creates some awkwardness in treatment for purposes of this opinion. For simplicity's sake this Court will refer to William's individual claims throughout.

**3.** Third-party defendants are the several State of Illinois agencies: Department of Public Aid; Department of Mental Health and Developmental Disabilities; Bureau of the Budget; Department of Children and Family Services; Department of Public Health; Department of Rehabilitation Services; and the Governor's Purchased Care Review Board.

**4.** As always upon a motion to dismiss, the Complaint's well-pleaded allegations are taken as true.

ance in the summer program was insisted upon by District 220; but when William returned home from the program the progress he had shown at St. John's had ceased, and he had become more destructive, aggressive and uncontrollable. During that same summer William's left leg was operated on to lengthen a tendon. Since the surgery William has needed intense, regular and ongoing physical therapy.

After the SEDOL summer program fiasco, Geraldine tried to place William in a number of private programs, among them those at Michael Reese Hospital, Chicago Read Mental Health Center, the Misericordia Program, the Augustana Nursery and the Glenkirk School for the Handicapped. All those facilities, except the Michael Reese Respite Program (a short-term diagnostic facility), concluded William was *not* an appropriate candidate for their programs, due to the severity and multiplicity of his handicaps. Both the Respite Program and Chicago Read recommended residential placement for William, rather than hospitalization or any other disposition.

Between July 1979 and July 1980 William lived with his mother in Barrington. During the 1980 spring term William attended Hawthorne School, a special education school served by SEDOL. Throughout the period William's behavior worsened, occasionally culminating in "acts of violence" toward his mother and 10 year old brother. Finally, in July 1980 William's parents placed him in the state's Department of Mental Health and Developmental Disabilities/Regional Intake and Habilitation Program (RIHAP) in Tinley Park, Illinois. But the RIHAP placement was unsatisfactory to them, largely because the program was more custodial than treatment-oriented.

On September 15, 1980 District 220 held a multidisciplinary conference, as required by EAHCA, to consider the issues involved in William's placement. Those present included William's parents, RIHAP and SEDOL staff members and the parents' representative. It was the multidisciplinary team conclusions that:

(1) William was a qualified handicapped child eligible for special education services.

(2) Residential placement in a community "homelike environment" was necessary for William to achieve any possible degree of success in school.

(3) Should such an environment not prove workable, the best alternative was residential placement in a private, nonpublic comprehensive treatment center.

Based on the team's recommendations, Geraldine agreed to a "trial placement" of William with specialized, state-licensed parents who were caring for one multiply-handicapped child and three mentally handicapped children. After two days, however, the foster parents concluded they "would not be able to provide Billy with the degree and intensity of supervision that he needs." Following William's discharge from the foster home placement, Geraldine returned William to RIHAP.

On October 25, 1980 District 220 held an EAHCA hearing to give William's parents the opportunity to contest the District's conclusions that:

(1) It was not District 220's responsibility to provide a residential placement to a handicapped child when the reasons for such placement were not "educational."

(2) If William were placed in a "homelike" setting within District 220 boundaries, the District could provide an appropriate "educational" program but was not required to service "noneducational" needs.

(3) Responsibility for serving "noneducational" needs of handicapped children rested with another state agency, *not* the local school district.

District 220's hearing officer formally found William was "a multiply handicapped child" who required "a complete Communication Program, Physical Therapy, Occupational Therapy and Behavior Modification," involving a "*non* educational residential placement" not an educational one. That decision was based on Rule 8.03 of the Emergency Rules and Regulations To Govern the Operation and Administration of

Special Education. In effect the hearing officer absolved District 220 from responsibility for William's placement, *except* for its purely "educational" components. "Noneducational" costs were to be borne by state agencies other than the State Board of Education or District 220.

Geraldine appealed the hearing officer's decision to the State Superintendent, as permitted by federal and state rules. Concerned that their son—still at RIHAP— "was languishing in an inappropriate program and potentially harmful environment, subject to irreparable physical and mental damage," William's parents placed him at the Institute of Logopedics in Wichita, Kansas, at their own expense.

On appeal the State Superintendent set aside the hearing officer's recommendation on grounds not here relevant. But William alleges the Superintendent's decision made clear the policy of not providing the "related services" William needs to receive a viable education:

> The Local School District's representatives are not responsible for recommending or providing services needed by the child as the result of non-educationally related family difficulties.

Again in accord with federal and state rules, the State Superintendent ordered another multidisciplinary meeting to develop an Individualized Education Plan for William. William argues such a pursuit of administrative remedy is fruitless in his case, since "the implication is clear that the statewide policy of dividing children into 'educational' vs. 'non-educational' components prevents the most appropriate and beneficial placement from being made."

This is so, William urges, because District 220 and the State Board of Education and its officials—by refusing to fund "non-educational" components—force recourse to other state agencies, who often will not or cannot fund them. As a result, handicapped children like William are denied an education altogether, for residential placements will not accept children when only their educational component will be funded. In that case the sole alternative, available only to well-to-do parents, is parental funding of "non-educational" components.

William asserts violations of his rights and those of children similarly situated under a number of state and federal provisions. This opinion will address in turn the several motions to dismiss the complaint for failure to state a cause of action and on standing grounds, as well as preliminary damage issues.

*Private Actions Under EAHCA*

Defendants do not contest that William is handicapped and entitled to EAHCA's protections. Nor do they cavil with the facts that special education in Illinois is funded in part with federal funds appropriated under EAHCA, and that to retain such funding the state and its officials must comply with the federal statute and regulations.[5]

In part those regulations require provision of "related services" to a handicapped child when necessary to enable the child to benefit from special education. 34 C.F.R. § 300.13. Only where the states provide such "related services"—like physical therapy, occupational therapy and psychiatric help—can many handicapped children learn at all, and thereby receive what EAHCA promises: "a free appropriate public educa-

---

**5.** Defendants do, however, question William's "standing" to challenge the educational/noneducational placement policy of the State of Illinois. They claim (R.Br. 5) the three documents William relies on to establish that policy "either bear no relationship to the named Plaintiff or have been specifically found to be inapplicable to his placement determination...." Those documents may or may not establish such a policy. However, on this motion to dismiss all that is required are the allegations that the policy exists and that it caused the

responsible agencies to deny William funds for a residential placement. William need not have produced or relied on a *single* document to withstand defendants' motion to dismiss. Existence of the policy and its application to William may well be hotly contested issues at trial, but such a determination cannot be made at this stage. In any case the documents produced by William, taken as a group, support inferences that the challenged policy *does* exist and that it affected the decision made by the agencies concerned with William's placement.

tion." *Kruelle v. New Castle County School District,* 642 F.2d 687, 694 (3d Cir. 1981); *Tatro v. State of Texas,* 625 F.2d 557, 563–64 (5th Cir. 1980); *North v. D. C. Board of Education,* 471 F.Supp. 136, 141 (D.D.C.1979).

■ Whether the education defendants' policy denies "a free appropriate education" under EAHCA will be tested later in this litigation. For the present the education defendants' motion to dismiss advances the sole contention that EAHCA creates no private right of action to enforce its substantive guarantees. That argument must be rejected.

Defendants rely upon Judge Getzendanner's decision in *McCowen v. Hahn,* No. 78 C 4233 (N.D.Ill., filed July 27, 1981). In sum they argue that while 20 U.S.C. § 1415 certainly allows parents the opportunity to challenge a school district's recommended program for an individual child (*cf. Anderson v. Thompson,* 658 F.2d 1205 (7th Cir. 1981)) parental remedies go no farther: They may *not* sue to enforce EAHCA's substantive requirements. If states are violating EAHCA, defendants assert the appropriate remedy is a funding cut-off by the federal government, or even an action for an injunction preventing such funding. *See McCowen,* slip op. at 13.

This Court finds Judge Marshall's recent ruling in *Parks v. Pavkovic,* 536 F.Supp. 296 (N.D.Ill.1982) more persuasive. Defendants' argument ignores the broad and clear language of 20 U.S.C. § 1415(b)(1)(E) requiring that state and local educational agencies provide handicapped children and their parents with (emphasis added):

> an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, *or the provision of a free appropriate public education to such child.*

If such complaints are not favorably acted upon by the state or local agency, Section 1415(e)(2) specifically gives the parents the right to bring a civil action in federal district court. As Judge Marshall noted in

*Parks,* at 301, Section 1415(b)(1)(E) is phrased in the alternative, and it is thus clear the complaint may be addressed solely to the alleged failure to provide *a free appropriate public education.*

EAHCA specifies what is meant by "a free appropriate public education": It includes "special education and related services." 20 U.S.C. § 1401(18). "Related services" means, 20 U.S.C. § 1401(17) (emphasis added):

> transportation, and *such developmental, corrective, and other supportive services* (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only) *as may be required to assist a handicapped child to benefit from special education...*

In short EAHCA does precisely what Judge Marshall concluded it does. It explicitly provides both a right to present a complaint that William is not being provided a free appropriate public education and a right to obtain review in this Court.

Defendants further contend that *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) blocks William's EAHCA claim. *Pennhurst* held that one section, 42 U.S.C. § 6010, of the Developmentally Disabled Assistance and Bill of Rights Act of 1975 was merely a statement of congressional policy for treatment of the handicapped, rather than a condition imposed by Congress for grants of federal funds.

*Pennhurst,* 451 U.S. at 17, 101 S.Ct. at 1539, teaches that if Congress wants to condition federal funds on certain state behavior, it must do so unambiguously. EAHCA § 1412 does just that:

> In order to qualify for assistance under this subchapter in any fiscal year, a State shall demonstrate ... that the following conditions are met: (1) The State has in effect a policy that assures all handicapped children the right to a free appropriate public education.

*Pennhurst* is therefore not applicable to William's cause of action, for the provision of "a free appropriate public education" is an express condition for Illinois' receipt of federal funds under EAHCA.

### Rehabilitation Act § 504

■ Defendants also say William cannot state a valid claim under Rehabilitation Act § 504, 29 U.S.C. § 794:

> No otherwise qualified handicapped individual in the United States, ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

*Lloyd v. Regional Transportation Authority*, 548 F.2d 1277, 1284–87 (7th Cir. 1977), held Section 504 creates both "affirmative rights" and a private cause of action. To invoke Section 504 a plaintiff must allege that he is an "otherwise handicapped person" and "an intended beneficiary of the federal financial assistance received." *Simpson v. Reynolds Metal Co.*, 629 F.2d 1226, 1227 (7th Cir. 1980). William is certainly a "handicapped person" under 29 U.S.C. § 706(7)(B). And he is the intended beneficiary of funds available through EAHCA.

Only one element of a Section 504 cause of action may be disputed here: whether William has been excluded from or denied the benefits of EAHCA "solely by virtue of his handicap." That nexus is plain. William alleges he has been effectively denied any education at all because the state refuses to fund "related services," a precondition to his ability to learn. William's need is, of course, solely a result of the severity of his handicap. Whatever causal link need be established between harm and handicap under Section 504, it is present here. *Cf. McCowen*, slip op. at 19.

*Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), urged on the Court by defendants, has no relevance. *Southeastern* held Section 504 did not compel affirmative action in the sense of extensive modifications of a nursing program to overcome plaintiff's deafness. William asks no "extensive modification"—or indeed any modification at all. Instead he seeks funding for services already offered in the marketplace.

### Equal Protection

■ Defendants cite no cases to buttress their motion to dismiss William's Equal Protection Clause claim. Education is a fundamental interest for Fourteenth Amendment equal protection purposes. *See Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); *see also Mills v. Board of Education*, 348 F.Supp. 866 (D.D.C.1972); *Pennsylvania Ass'n for Retarded Children v. Pennsylvania*, 334 F.Supp. 1257 (E.D.Pa.1971) (three judge court), *modified* 343 F.Supp. 279 (1972).

■ To withstand a motion to dismiss, William need only allege he and others in his category have been deprived of the right to education, while other non-handicapped children enjoy that right. That places the burden on the state either (a) to rebut the allegation of deprivation or (b) to justify the deprivation by asserting some legitimate state interest. Neither can be accomplished through a motion to dismiss.

### State Law Claims

Defendants have not argued William's state law claims (under both the Illinois School Code and Art. I, § 2 of the state Constitution) do not state a cause of action. They have rather contended such claims must be dismissed under *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Because this opinion has sustained the federal claims, the pendent state claims may remain in the case as well.

### Damages

■ Defendants have moved to dismiss—or more properly to strike—William's damage claims. Unquestionably William has a prima facie right to one category of dam-

ages: reimbursement for his placement at the Institute of Logopedics. True enough EAHCA § 1415(e)(3) provides:

> During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child. . . .

See *Stemple v. Board of Education*, 623 F.2d 893 (4th Cir. 1980). But *Anderson v. Thompson*, 658 F.2d 1205, 1213–14 (7th Cir. 1981), held that recovery of expenses *was* available in "exceptional" circumstances, one of which was a situation in which a child's physical health would have been endangered by remaining in his or her present placement.

William's Complaint alleges sufficient facts to bring him within the *Anderson* exception, at least at this stage. To recover the expenses of the unilateral placement in Wichita, William will of course have to flesh out the "exceptional circumstance" with proof.

There remains, however, the question whether William may recover the $525,000 he seeks in "general damages" under Complaint Counts I and II.[6] *Anderson*, 658 F.2d at 1213–14, forecloses such a recovery under EAHCA, for the exceptional circumstance "damages" permitted there were reimbursement for the costs of services and *not* tort damages. This Court has already held that Section 504 may not be used to "take an end run" around Anderson and that ". . . *Anderson* compels the conclusion that [plaintiffs] may not seek damages under Section 504 *for a claimed wrongful exclusion from the benefits of EAHCA*" (emphasis in original). *Reineman v. Valley View*

*Community School District*, 527 F.Supp. 661, 664–65 (N.D.Ill.1981). Any other result would create an exception to *Anderson* that would swallow up its rule, because Section 504 is *always* available where a plaintiff claims a wrongful exclusion from EAHCA's benefits.

William's Section 504 claim is precisely one of wrongful exclusion: He asserts he was deprived of the benefits of a federally-assisted program, EAHCA, solely on account of his handicap. No other type of discrimination is alleged; no other federal program is implicated. *Anderson* and *Reineman* therefore apply with full force to bar William's general damage claim under either EAHCA or Section 504.

William's prima facie equal protection claim poses a wholly different problem. General damages are normally recoverable for violation of equal protection rights by state officials, 42 U.S.C. § 1983, as are attorneys' fees and costs under 42 U.S.C. § 1988. That result should not be changed by the fact that Congress did not desire to create a general damage remedy under EAHCA.

William's EAHCA and Section 504 claims involve different legal issues from his equal protection claim, and they will involve different kinds of proof at trial. Under EAHCA and Section 504, for example, William has an unquestioned *entitlement* to special education and related services. Thus the key issue those claims present is whether "related services" include the things William claims he needs in order to learn. But William does not have a clear entitlement to special education of any kind under the Equal Protection Clause. Indeed this action seeks to establish that very entitlement as a *constitutional* matter.

---

**6.** Although William's *individual* count (Count II) asks $500,000 in damages, it does not repeat the equal protection claim advanced as part of Count I's *class* allegations. As a strict pleading matter, then, the analysis in the text would justify sustaining the $25,000 general damage claim in Count I while perhaps striking the $500,000 claim in Count II. That route will not be followed for three reasons:

(1) All parties have treated the $525,000 general damage claim as a lump sum in their submissions.

(2) William's pendent state law claims might well support general damages.

(3) As a practical matter, striking the general damage prayer in Count II would inevitably lead to William's motion to amend, which this Court would grant.

In the last respect, William's counsel is expected to cure the gap by tendering such an amendment.

*Reineman*'s holding thus proceeded from the fact that without EAHCA there would be *no* viable Section 504 claim at all. In contrast, EAHCA's existence has no impact whatever on William's equal protection claim. No possibility of an "end run" exists in that respect. This Court therefore concludes that Congress did not intend, by passing EAHCA, to do away with the general damage remedy under the Equal Protection Clause and Section 1983 for handicapped children who claim unequal treatment of their right to an education.[7]

Defendants also invoke the Eleventh Amendment to block any general damage award in favor of William, *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). But the individual defendants have not been sued in their "official capacities." *Shashoua v. Quern*, 612 F.2d 282, 284 (7th Cir. 1979) teaches that the Eleventh Amendment applies only where no personal involvement by the state official is claimed.[8] William's Complaint alleges ample personal involvement by *all* individual defendants.[9]

### "Local" Defendants' Cross-Claim

District 220, Slocum and SEDOL have cross-claimed against Gill, Muirhead and the State Board [10] on a simple theory: They say they have refused to pay for "non-educational" placements under EAHCA because the state education officials and the State Board have threatened not to reimburse them for such funding. Because in effect they have been faithfully following orders, they ask reimbursement from the state defendants for any damages awarded to William. They also seek a concomitant declaratory judgment as to *which* agency, state or local, is responsible to pay for "non-educational" placements if such placements must indeed be funded.

Though the state defendants have moved to dismiss the cross-complaint for failure to state a cause of action, they have failed to adduce serious arguments in support of their motion. In any event, EAHCA places responsibility on "the State" to adopt "a policy that assures all handicapped children the right to a free appropriate public education" (20 U.S.C. § 1412(1)) and to develop the plan to implement that policy (*id.* at § 1412(2)(B)). Illinois' School Code provides for reimbursement to local districts by the State Board according to a formula in Ill.Rev.Stat. ch. 122, § 14–7.02. If William should prevail in this action, the local school district defendants would plainly have a cause of action against the State

---

7. It should be noted that this holding explicitly avoids the question whether Congress *could*, consistently with constitutional principles, eliminate such a general damage remedy by enacting EAHCA.

8. There is not enough in the record now before the Court to determine the possible applicability of the other side of the coin as stated in *Carey v. Quern*, 588 F.2d 230, 233 (7th Cir. 1978):

    The fact that the state is not named as a defendant is of no consequence, for even though only individual state officials are named as defendants, "when the action is in essence one for recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity" under the Eleventh Amendment.

    William does claim that the actions of *particular* state officials have harmed him *personally*, through their unwillingness to provide him with an education that is his by statutory and

constitutional right. No ruling is implied by this decision as to whether any of the specific prayers for relief might present Eleventh Amendment difficulties under the *Edelman-Carey* analysis.

9. As for District 220, SEDOL and their officials, none may validly claim Eleventh Amendment immunity. They are *not* state agencies under the reach of *Edelman v. Jordan. See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979); *Monell v. Department of Social Services*, 436 U.S. 658, 690 n.54, 98 S.Ct. 2018, 2035 n.54, 56 L.Ed.2d 611 (1978); *Parks v. Pavkovic*, 536 F.Supp. 296, 306 n.18 (N.D.Ill., 1982).

10. Because William did not sue the State Board, it should have been labeled a third-party defendant rather than as a defendant in the cross-claim.

Board and its officials. Accordingly the motion to dismiss the cross-complaint is denied.

### "Local" Defendants' Third-Party Complaint

 District 220, Slocum and SEDOL have also filed a third-party complaint against a number of state agencies that provide "related services." They allege those agencies are parties to a "Memorandum of Understanding" under which they agreed to participate in placement of handicapped children in residential facilities where the placement was for "non-educational" reasons. That agreement is claimed to be merely reflective of the third-party defendants' obligations to handicapped children under a variety of Illinois statutes and regulations. *See, e.g.*, Ill.Rev.Stat. ch. 91½, ¶¶ 100–7.1, 100–7.2, 100–11.1, 100–19; Ill. Rev.Stat. ch. 23, ¶¶ 5005, 5005a. Allegedly the state agencies have failed to live up to their agreement and the separate legal obligations requiring them to participate in such placements.

Third-party defendants move to dismiss on a variety of grounds, none requiring extended discussion. They first assert third-party plaintiffs' failure to state a claim. But the existence of the Memorandum, statutes and regulations establishes a prima facie case for requiring the third-party defendants' participation in placements. In fact the Memorandum alone is enough to defeat the motion, for the inference favorable to third-party plaintiffs is that the Memorandum is a binding agreement mandating the cooperation of the listed state agencies in "non-educational" placements of handicapped children.

 Nor do third-party defendants' jurisdictional and procedural arguments fare better. Fed.R.Civ.P. 14(a) certainly allows this Complaint, since third-party defendants may all be "liable to" the local school districts—may be required to provide services to handicapped children with "non-educational" difficulties—if William prevails in the main action. And the denial in third-party plaintiffs' Answer of this Court's jurisdiction over them does not inhibit their impleading third-party defendants that would be in the case if the jurisdictional arguments were rejected.

### Conclusion

All motions to dismiss—by defendants, by cross-defendants and by third-party defendants—are denied. Each party that has not previously answered the complaint, cross-complaint or third-party complaint, as the case may be, is ordered to file such an answer on or before April 30, 1982. Plaintiff is ordered to address the issue of class certification expeditiously, as contemplated by Fed.R.Civ.P. 23(c)(1). This action is set for a further status report May 7, 1982 at 9 a. m.