**WILLIAM S., et al., Plaintiffs,**

**v.**

**Donald GILL, et al., Defendants.**

**No. 81 C 3045.**

United States District Court, N.D. Illinois, E.D.

July 16, 1984.

Matthew Cohen, Canel, Aronson & Whitted, Chicago, Ill., for plaintiffs.

Paul Millichap, Asst. Atty. Gen., Neil F. Hartigan, Ill. Atty. Gen., Chicago, Ill., for state defendants.

John M. Collins, Jr., Brydges, Riseborough, Morris, Franke & Miller, Chicago, Ill., for local defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

William S. ("William"), a handicapped minor child, by his mother and next friend, Geraldine S. ("Geraldine"), sues various state and local educational officials and entities,[1] asserting his statutory and constitutional rights to an appropriate education. This Court has issued three published opinions in this case (and some unpublished ones as well), permitting the litigation to advance very near the trial stage:

1. "Opinion I," 536 F.Supp. 505 (N.D. Ill.1982) denied defendants' Fed.R.Civ.P. ("Rule") 12(b)(6) motion to dismiss.

2. "Opinion II," 98 F.R.D. 463 (N.D. Ill.1983) granted William's Rule 23 motion for class certification.[2]

3. "Opinion III," 572 F.Supp. 509 (N.D.Ill.1983) (a) denied defendants' Rule 56 summary judgment motion and Rule 23 class decertification motion but (b) found, pursuant to Rule 56(d), certain of William's theories were not supported sufficiently to advance to trial.

---

1. "State defendants" comprise Illinois State Board of Education ("ISBE"), Illinois Superintendent of Education Donald G. Gill ("Gill") and ISBE Chairman Donald Muirhead. "Local defendants" are Barrington Community School District 220 ("District 220"), District 220 Superintendent Clyde Slocum, Special Education District of Lake County ("SEDOL") and SEDOL Chairman Larry Vuillemot. This Court understands Gill has recently resigned his position as State Superintendent. However, in light of this opinion no substitution of defendants is necessary.

2. William's class is defined as:

1. All Illinois children between the ages of three and twenty-one who have been or will be identified by the Multidisciplinary Staff Conference of their local school district as handicapped children requiring special educa-

tion and related services and who have been or will be refused some or all of those services on the grounds that the child requires such services for primarily noneducational reasons as defined in Item Six, Page 2 of the Memorandum of Understanding of August 26–27, 1980; and

2. All Illinois children between the ages of three and twenty-one who have been or will be refused identification as handicapped children entitled to special education and related services by their local school district on the grounds that the child requires such services for primarily non-educational reasons as defined in the Memorandum of Understanding of August 26–27, 1980 and who do not receive those services from the other state agencies governed by the Memorandum of Understanding.

On January 19, 1984, prompted by this Court's having warned many important legal issues remained unresolved and were subject to a finding defendants' nonassertion of any such issues had waived them, defendants filed a mislabeled "Supplementary Motion for Summary Judgment." [3] After completion of briefing on that motion but before this Court had rendered its decision, William reported he had changed his residence from Barrington to Arlington Heights, outside the area served by District 220. Defendants again moved for decertification or dismissal because of William's new status, and their issue-narrowing motion was continued while the parties briefed the consequences of William's move.

Now the dynamics of change have forced a fresh look at several levels. Not only is the viability of William's own theories of recovery in question, but the individual mootness problems triggered by William's move to a new home also challenge the adequacy of his theories to support continued litigation by the class. And because this Court has ruled on a summary judgment motion and has now given the parties the opportunity to submit whatever additional evidence they desire on the issues, the adequacy of the evidence to bring those theories to trial is also up for decision. For the reasons stated in this memorandum opinion and order this Court rules:

 1. All William's theories in support of damages (as opposed to prospective relief) for himself and the class lack sufficient support either in law or in evidence. Those damage claims are therefore stricken pursuant to Rule 16.

 2. William's remaining theory in support of prospective relief for himself is moot.

 3. As permitted by Rule 23(c)(1), the class is decertified for William's failure to offer sufficient evidence to support his theory of prospective relief for the class.

*Statutory and Regulatory Background* [4]

Under the Education for All Handicapped Children Act of 1975 ("EAHCA"), 20 U.S.C. §§ 1401–1461, every handicapped child between the ages of three and twenty-one is guaranteed "a free appropriate public education." That federal mandate contemplates that a designated "State educational agency" assume primary responsibility in each participating state for providing "appropriate public education," including "special education and related services," at public expense. 20 U.S.C. §§ 1401(7), 1412(6); 34 C.F.R. § 300.340. "Related services" in turn are those "required to assist a handicapped child to benefit from special education." 34 C.F.R. § 300.13. Thus the placement of a handicapped child in a public or private residential program (as William has sought before and throughout this litigation) may qualify as a "related service."

As Illinois' "State education agency," ISBE is responsible for insuring that all Illinois agencies (including local school districts) that provide special education or related services comply with EAHCA (20 U.S.C. § 1412(6), 34 C.F.R. § 300.600(a)(2)). ISBE is not relieved from its ultimate responsibilities in that area by the possibility of financial or in-kind assistance from other government or private agencies. 34 C.F.R. § 104.33(c)(1). Illinois' School Code imposes similar obligations on ISBE. See Ill. Rev.Stat. ch. 122, ¶¶ 14–7.02, 14–8.01. In addition Illinois Constitution Art. X, § 1

---

**3.** Of course parties should not be permitted to move for summary judgment twice. Under Rule 16 however the district courts are given broad discretion to resolve which legal and factual issues are genuinely disputed prior to trial. Thus the motion could have been called an "Issue-Narrowing Motion" or simply a "Rule 16 Motion." District courts are under no obligation to treat with such motions. Such motions of course have the same threshold for precluding trial on an issue as do summary judgment motions: All reasonable inferences must be drawn in favor of the nonmoving party. See *Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984).

**4.** This section borrows freely from this Court's earlier excursion into the applicable statutory and regulatory framework, as part of Opinion II, 98 F.R.D. at 465–66.

declares education through the secondary level shall be free and of high quality.

William challenges defendants' policy (the "Policy") of disclaiming any obligation to finance "related services" that primarily serve the handicapped student's noneducational needs, even when such services are also critical to his or her ability to benefit from an education. That disclaimer had its genesis in the August 1980 Memorandum of Understanding (the "Memorandum") executed by ISBE and several other state agencies that provide noneducational assistance to disabled individuals. That Memorandum (1) defines categories of handicapped children whose needs are considered primarily "noneducational" and (2) absolves ISBE and local school districts from any financial responsibility as to the noneducational facets of residential placements, regardless of whether another state agency supplies the requisite funding.

State defendants concede the existence of the Policy but argue it does not interfere with ISBE's performance of its state and federal law duties. Local school districts attempt to make "related services" available to handicapped children whose needs are primarily noneducational, as defined in the Memorandum, by convening a "multidisciplinary staff conference" to evaluate the needs of each such child.[5] Multidisciplinary staff conferences are attended by "representatives of the appropriate state agencies" who "provide technical assistance and a preliminary assessment of the eligibility of the student to services of that state agency" (Gill Aff. ¶ 2).

### William's Claims

William is a twelve-year-old suffering from severe multiple handicaps: moderate to profound bilateral hearing loss, mild to moderate functional mental retardation and spastic quadriplegia affecting his left side. William suffers up to three to four grand mal seizures per day, though he is on medications that at least to some degree suppress the outward symptoms of the seizures (Geraldine Dep. 96–97, 103).

When William moved to District 220 with his mother Geraldine, District 220 eventually convened a multidisciplinary staff conference to consider his case.[6] As Opinion III, 572 F.Supp. at 515 found, William's multidisciplinary staff conference did indeed lead to an offer to William of free residential placement, the only question open for trial on that score being whether that proffered placement was "appropriate." Geraldine was of the opinion it was not, and she placed William at the Institute of Logopedics (the "Institute") in Wichita, Kansas.

When it became clear William could not obtain state funding for his placement at the Institute, William (through Geraldine) filed a two-count complaint, the current version of which is the Second Amended Complaint (the "Complaint"):

1. Count I seeks on behalf of William and a class of similarly situated handicapped children declaratory and injunctive relief that would essentially prevent defendants from continuing to adhere to the Policy.

2. Count II seeks reimbursement for the cost of William's placement at the Institute, an injunction requiring defendants to fund that placement until William turns 22, attorneys' fees and $500,000 in damages.

Both counts charge defendants' Policy-based refusal to fund William's placement at the Institute violates William's rights to:

1. a free appropriate education—a right claimed under (a) EAHCA, (b) Ill. Const. Art. X, § 1 and (c) Ill. School Code Art. XIV, Ill.Rev.Stat. ch. 122, ¶ 14–1.01; and

2. educational opportunities commensurate with those furnished to non-handi-

---

5. By the second part of his class definition (see n. 2) William suggests some children are wrongfully denied identification as handicapped because their extraordinary needs are primarily noneducational. Any such children apparently would not receive the benefit of a multidisciplinary staff conference.

6. This text sentence telescopes a very long story. See Opinion III, 572 F.Supp. at 511–13.

capped children and other handicapped children—a right originally claimed under both (a) Rehabilitation Act § 504, 29 U.S.C. § 794 and (b) the Equal Protection Clause of the Fourteenth Amendment.

Opinion III narrowed William's options by declaring (1) he cannot recover damages under EAHCA (572 F.Supp. at 516–17) and (2) he has no cause of action for denial of appropriate residential placement under the Rehabilitation Act (*id.* at 517). That has left state law and Equal Protection Clause theories in support of both prospective relief and damages, and the EAHCA theory in support of prospective relief.

### 1. *State Law Claims*

Defendants' attack on William's state law theories at the summary judgment stage was a throwaway. Apparently they assumed if the federal law claims passed muster, summary judgment would be inappropriate anyway. In any event they urged only that this Court dismiss William's state law claims along with the federal under *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Having approved federal theories of relief, Opinion III, 572 F.Supp. at 518 retained the state theories as well.

■ Now the state law component of this case has evaporated. Since Opinion III was issued in September 1983, *Pennhurst State School & Hospital v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 921, 79 L.Ed.2d 67 (1984) has unequivocally declared federal courts cannot enforce state law against the state and its agents. William's attempts to distinguish *Pennhurst* cannot be reconciled with its broad language.[7] Consequently his state law claims

are dismissed without prejudice pursuant to Rule 16.

### 2. *Equal Protection Claims*

Opinion I, 536 F.Supp. at 511 refused to reject William's equal protection theory under Rule 12(b)(6), stating:

> To withstand a motion to dismiss, William need only allege he and others in his category have been deprived of the right to education, while other non-handicapped children enjoy that right. That places the burden on the state either (a) to rebut the allegation of deprivation or (b) to justify the deprivation by asserting some legitimate state interest.

Opinion III, 572 F.Supp. at 517–18 then denied summary judgment to defendants on William's equal protection claims because defendants had come forward with neither (1) a valid explanation of why William had not met his burden nor (2) any evidence to meet the state's burden.[8]

Now, in attempting to narrow the issues for trial, defendants have belatedly produced some evidence of the state's legitimate interest in its classification scheme. That finally enables this Court to lay the requirements of the Equal Protection Clause alongside William's asserted showing of unequal treatment, to see whether the latter measures up to the former.

In *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) the Supreme Court explained the equal protection analysis associated with the denial of educational opportunities. It said (*id.* at 223, 102 S.Ct. at 2398, citing *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 28–39, 93 S.Ct. 1278, 1293–1300, 36 L.Ed.2d 16 (1973)):

> Nor is education a fundamental right; a State need not justify by compelling ne-

---

**7.** *Town of Burlington v. Department of Education,* 736 F.2d 773 at 786–790 (1st Cir.1984) held federal courts may consider state substantive standards for education for the handicapped in exercising the power conferred by EAHCA, because EAHCA incorporated by reference such standards "that exceed the federal basic floor of meaningful, beneficial educational opportunity" (*id.* at 789). That case however does not deal with relief against the state or its agents at all.

Hence it does not in any respect impair the conclusion in the text.

**8.** Defendants' Jan. 19 Mem. 3 misses the whole point of this type of analysis when it asserts this Court has "altered its perspective on this issue since [Opinion I] ... in the absence of any input from the Plaintiffs."

cessity every variation in the manner in which education is provided to its population.

However it went on to say (*id.* 457 U.S. at 223, 224, 102 S.Ct. at 2398, 2399) the *denial* of "a basic education" imposes heavy "costs to the Nation and to the innocent children who are its victims." Thus it concluded (*id.* at 224, 102 S.Ct. at 2398) such a policy of denial of education "can hardly be considered rational unless it furthers some substantial goal of the State."

■ *Plyler* thus appears to teach the outright denial of educational opportunities to the handicapped would have to be supported by a substantial state interest. But William has not shown any such absolute denial. Rather William has shown a single individual (William himself) was sent before a multidisciplinary staff conference (instead of being served by District 220 alone) because his needs were classified as "primarily non-educational." That conference then procured for its one individual (William) an offer of free residential placement (it may be inferred for current purposes, without deciding the issue, that placement was not an "appropriate" one). Additionally, William's belated current submission (see n. 15) arguably shows some *delays* in placement decisions as to a few other children (a matter discussed later in this opinion).

But William has *not* shown other handicapped children were *denied* "appropriate" educational placement because of the threshold primarily-educational vs. primarily-non-educational needs determination, nor has he even shown his own situation would have been any different had his educational placement decision not begun with the determination whether his needs were primarily educational or non-educational. In short William has shown the Policy does divide the handicapped into two groups for different treatment. That mere difference, though, is not enough: William has tendered no evidence demonstrating the Policy usually (or even *ever*) leads to worse treatment for the group to which he belongs once final placement decisions are made.

William's efforts to characterize his presentation differently are to no avail. He refuses to address state defendants' showing of a state interest because he says (Feb. 8 Mem. 8) it "is irrelevant to a determination of whether the state has a substantial interest in refusing placements which are not solely for educational purposes." But that is simply a mischaracterization by William of his own lack of showing. He has not demonstrated the *state* refuses non-educational placements; instead he has shown the *local school district* refuses non-educational placements. There is no evidence the former denial ever occurs. In the only example before this Court (William's own case), the state did in fact offer a non-educational placement. Yet it is only a refusal by the state to do the latter that state defendants must justify.

State defendants have indeed put forward a legitimate state interest, sufficient to justify the Policy under the Equal Protection Clause. Gill Aff. ¶ 4 states:

[The Policy] serves to draw upon the professional expertise of employees of the various state code agencies affected to provide appropriate programs and placements for handicapped children of this State. It further serves to make available a wider variety of placements for handicapped children to better accommodate their needs. In addition, Affiant believes that it is far more appropriate for mental health professionals and trained social service workers to make recommendations and decisions that will affect removal of children from their homes or placement in treatment facilities, hospitals or other similar institutions.

That asserted justification is administrative in nature. It would not constitute a "substantial state interest" if the Policy were in fact applied as William urges—to *deny* education. *Plyler* however makes clear equal protection analysis is more flexible than that. Here William has not shown an absolute denial of education, prohibited in *Plyler*. Instead he has shown

William and others like him must pursue placement by seeking grants from a variety of state agencies rather than obtaining needed financing and services directly from a single source, their local school district.

Where William has failed is in showing—as he promised by his class definition—such children do not ultimately receive those grants. Thus the Policy works a deprivation in a very limited sense: inability to look only to the school district for all needs, and perhaps some delay occasioned by the complexity of the non-educational needs of the handicapped. But that deprivation is amply justified by the state's interest in limiting the authority of local school districts to their areas of expertise, and by related concerns as stated in Gill's affidavit.[9]

William has thus lost in this area as well. His claims on behalf of both himself and the class are denied pursuant to Rule 16—in this instance with prejudice.

### 3. EAHCA Claims

Finally William argues defendants denied him and his class their right to a free appropriate education under EAHCA. Originally William sought damages for himself but not the class under that theory, but Opinion III, 572 F.Supp. at 516–17 rejected William's claim to such damages. Thus both William and the class are now limited to prospective relief under EAHCA.

William's status has changed, mooting his claim for prospective relief. When William moved from Barrington to Arlington Heights, local defendants lost all prospective duties and obligations toward him.

State defendants still have obligations to William under EAHCA, but the entire case against them would have to change for William to show he is entitled to prospective relief in his current situation. William has no evidentiary basis for claiming they have denied his right to an appropriate education as to any request for special education and related services in Arlington Heights. Even were that not so, he has not exhausted administrative remedies in that locality as required by *Timms v. Metropolitan School District,* 722 F.2d 1310, 1316–17 (7th Cir.1983).

Moreover William's problem is not "capable of repetition yet evading review," so as to permit his personal stake in the controversy to survive his move from Barrington. William argues he would be a beneficiary of a declaration the Policy is invalid. That contention fails under *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), which held a citizen could not obtain an order enjoining police against using "chokeholds" after being subjected to one unless (*id.* 103 S.Ct. at 1669) he himself "faced a real and immediate threat of again being illegally choked." Without that kind of personalized showing the capable-of-repetition doctrine simply does not apply in favor of an individual seeking an injunction. Here, as already explained in the "Equal Protection Claims" section of this opinion, William has not demonstrated the Policy generally imposes on handicapped children in his present community the type of problem he has experienced in Barrington.[10]

---

9. As a last line of defense William states (Feb. 8 Mem. 8 n. 1):

   If this Court does not accept Plaintiffs' view of the irrelevancy of Dr. Gill's affidavit, Plaintiffs will ask the Court to defer ruling until after the deposition and possible additional briefing.

   Gill's deposition was scheduled for March 21–22, 1984. While affidavits may be denigrated as "the least satisfactory form of evidentiary materials on which to base a summary judgment," see 6 (Part 2) *Moore's Federal Practice* ¶ 56.15[4], at 56–514 (2d ed.1982), William's February 8 footnote is not sufficient reason to delay ruling any longer. Of course enough time has passed

for William to have submitted Gill's deposition testimony and argument thereon if he so desired. Moreover it is the uncontroverted fact the Policy does not work any across-the-board deprivation, rather than the quality of Gill's affidavit, that has doomed William's equal protection argument.

10. Quite the contrary is true. By far the most direct evidence as to whether William will be offered a free appropriate education in Arlington Heights is his account of the treatment he received there before he moved to Barrington in the first place. See Opinion III, 572 F.Supp. at 511. That account suggests William did receive an appropriate education at that time. Surely

William founders independently on the second prong of the test: "evading review." William was nine when this action was filed and is about twelve today. Had he not moved, his case could have gone to trial in the near future. If (contrary to his past experience) he is denied appropriate education in Arlington Heights, he should be able to assert and adjudicate his claim within the time EAHCA protects him. Consequently he simply does not fit the mold of claimants whose adverse experiences "evade review." See *Lyons*, 103 S.Ct. at 1669.

■ William himself is thus out of court. But that does not necessarily require dismissal of a class action. *Sosna v. Iowa*, 419 U.S. 393, 399–403, 95 S.Ct. 553, 557–559, 42 L.Ed.2d 532 (1975). Nonetheless the propriety of continued class certification must be evaluated in light of the conclusions already reached: the mootness of William's individual EAHCA claim, the required dismissal without prejudice of William's and the class's state law claims, and the invalidity of their Equal Protection Clause claims. All those things considered, this Court must also conclude William's evidentiary presentation as to other class members is not adequate to warrant continued class certification.[11]

William simply has not shown any of his fellow class members have been denied their substantive rights under EAHCA to a free appropriate education. True, he has shown the Policy often is responsible for refusals by local school districts to pay for "related services." And in his own case he has demonstrated, though such a refusal did not deprive him of "related services" altogether, the services offered might not have permitted him to receive an appropriate education. As discussed in this opinion's "Equal Protection Claims" section, that bare showing creates no reasonable inference any of William's fellow class members have been denied appropriate education by the Policy. William has proved nothing at all about the experience of a typical class member affected by the Policy.

William's most recent evidentiary submission (see n. 15) suggests even though class members may ultimately receive appropriate educational placement, the delay occasioned by the Policy to some few of them may violate EAHCA. That potential theory is really nonpersuasive on its merits (even apart from the dubiousness of its being advanced at this late stage of the litigation [12]):

---

that experience does not support the opposite inference now.

**11.** Evaluation of William's evidentiary presentation implies this Court is engaging in reconsideration of Opinion III. Of course this Court's earlier denial of summary judgment (a non-final order) may be reconsidered in light of recent factual developments. See *John Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82, 88, 42 S.Ct. 196, 198, 66 L.Ed. 475 (1922). No wrongful prejudice can result to plaintiffs from reconsidering Opinion III for a number of reasons:
　1. Parties may be held to the consequences of their failing to present all relevant evidence in their favor on summary judgment. See *Keene Corp. v. International Fidelity Insurance Co.*, 736 F.2d 388 at 393 (7th Cir.1984), adopting this Court's opinion below, 561 F.Supp. 656, 662–67 (N.D.Ill.1983). William cannot be heard to complain he is in possession of evidence not presented to this Court that would avert summary judgment against the class.
　2. Defendants' current motion purports to be one for "summary judgment." Mislabeled

or not, it too has put William on notice to produce relevant evidence.
　3. After briefing on the pending motions was complete, this Court requested a final submission from William on the number of persons in the class (handicapped children denied needed services by the Policy, see n. 2). Any evidence William would have opposing summary judgment against the class should have been produced in support of the numerosity of the class.

**12.** It is really too late for William to attempt to change the focus of his claims. This Court may properly construe claims broadly for Rule 12(b)(6) purposes (*Hishon v. King & Spalding*, — U.S. —, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984)), but a plaintiff must live with his own formulation at an advanced stage such as the present one. William opposed summary judgment on the ground the educational placement offer he ultimately received was inappropriate under EAHCA, and it was not until four days ago (July 12) he even hinted *delay* caused by the Policy might be a basis on which to continue this lawsuit.

1. As a matter of proof, a showing that some handicapped children experience delays in obtaining educational placement is only half the story. William would also have to establish (and he has not even addressed the subject) the non-educational needs of such children would not occasion the same kinds of delay even in the absence of the Policy. Gill Aff. ¶ 4 illustrates that—Policy or no Policy—non-educational placement decisions may require the assemblage of people with expertise not possessed by local school districts.

2. Even if it could be said William had proved *something* by showing a few class members have experienced delay, he has not shown such delay has amounted to a denial of a free appropriate education in violation of EAHCA. *Georgia Association of Retarded Citizens v. McDaniel*, 716 F.2d 1565 (11th Cir.1983) illustrates the correct approach to pursuing procedural EAHCA grievances by a class. There (*id.* at 1574–75) plaintiffs presented evidence the challenged procedure denied appropriate education to the class *in general.* Thus even though the claim of the named plaintiff had become moot, *id.* at 1571, under *Sosna* principles the class obtained an injunction against the challenged procedure and the injunction was upheld on appeal.

3. Even apart from the just-described flaws, William's small number of scattered examples would fail the "numerosity" component of class certification.

So neither William's original nor his new theories of EAHCA violations pass muster under his showing (or more accurately, lack of showing) on behalf of the class.[13] It should be stressed this does not betoken any firm conviction the Policy is lawful under EAHCA. Rather dismissal is necessitated because William has not garnered sufficient evidence about any purported class member but himself. This is a problem of adequacy of class representation, to be disposed of under Rule 23 rather than Rule 56.

William's absence of proof on behalf of the class poses still another problem of class representation. After all the class is defined as handicapped children denied services.[14] William's failure to demonstrate any handicapped children ultimately were denied those services is a failure of proof the class has any members. William urges the class has numerous members because the Policy has been used by local school districts to deny funding to handicapped children in the first instance.[15] But that limited showing does not establish those children never received funding or related services from *any* state agency—especially

---

**13.** This opinion does not decide whether in light of our Court of Appeals' recent decision in *Timms* absent class members must be shown to have exhausted their administrative remedies before they could proceed without William. Certainly, given William's own experience, there is no predicate for indulging any inference that such exhaustion would have been futile.

**14.** See n. 2. Subclass 2's definition clearly requires class members not to have "receive[d] those services from [*either* their local school districts *or*] the other state agencies." Subclass 1 is not so precisely expressed: It requires class members to have been "refused some or all of those services," but does not specify which agencies (local school districts, other state agencies, or both) did the refusing. However, in light of Subclass 2's definition and EAHCA's standing requirement (liberal though it may be, see 20 U.S.C. § 1415), handicapped children do not belong to Subclass 1 simply because their *local school district* refuses them services. Rather

they must be refused services *altogether,* at least for some period of time longer than in the absence of the Policy.

**15.** After briefing was completed and this Court had reached a preliminary decision, defendants submitted additional evidence on the number of children in the class and William has just filed an affidavit in response. Each side's evidence was filed in conjunction with a motion for leave to file that evidence. Leave is hereby granted. While this Court's resolution of the numerosity question does not rely on those submissions, they do bear out two propositions:

1. Even the number of handicapped children in situations governed by the Policy tends to dwindle on close examination.

2. Proof that applications by handicapped children for special education or related services are governed by the Policy is a far cry from proof they are treated any differently than they would have been in the absence of the Policy and therefore belong to the class.

in light of William's own experience. Finally, even were the few instances of possible delay adduced by his last submission legally sufficient (as they are not), he would still fail the numerosity test.

In short, decertification is within the discretion of this Court for any of three reasons:

1. This is a class action in which the named plaintiff's claim has become moot. What remains of the controversy is not "an appropriate one for passing on ... [statutory] questions" (*Doe v. Fahner*, 516 F.Supp. 514, 515 (N.D.Ill.1981)), because formal discovery is complete and evidence on whether the class should be afforded relief is inadequately developed.

2. Decertification under Rule 23 is appropriate because William is no longer an adequate class representative—not because his lawyers have not prosecuted this action diligently and skillfully (they have), but because they were unprepared for the possibility they would have to rely on evidence of denial of appropriate education to children other than William.

3. Decertification also is appropriate because evidence does not support the class's claims of numerosity.

Accordingly the class is decertified. Though this Court has decided the Policy has not been shown to violate EAHCA, no res judicata impact on putative class members is appropriate.[16]

### Conclusion

This action is dismissed. That result is occasioned by the following rulings in this opinion:

1. Defendants' issue-narrowing motion is granted in part, not in its mislabeled Rule 56 garb but under Rule 16:

    (a) All William's state law claims are stricken without prejudice as to both William and the class.

    (b) William's Equal Protection Clause claims are denied with prejudice as to both William and the class.[17]

2. William's individual EAHCA claim for prospective relief is dismissed as moot.

3. As permitted by Rule 23(c)(1), the class is decertified because William has failed:

    (a) to perform as an adequate class representative by garnering evidence about the class from which it could

---

**16.** As to res judicata effects of class action determinations on individual class members, see generally *Cooper v. Federal Reserve Bank of Richmond*, —— U.S. ——, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984).

**17.** After this opinion was in final form state defendants' counsel apprised this Court of *Smith v. Robinson*, —— U.S. ——, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), a decision not yet received by this Court from United States Law Week. *Smith* held because EAHCA's comprehensive remedial scheme was applicable, petitioner could not invoke provisions providing for the award of attorneys' fees to parties prevailing on Equal Protection Clause claims (42 U.S.C. § 1988) or on Rehabilitation Act claims (29 U.S.C. § 795).

*Smith*'s discussion of the relationship between the Equal Protection Clause and EAHCA (at —— ——, 104 S.Ct. at 3468–3470) may perhaps render this opinion's "Equal Protection Claims" discussion superfluous. *Smith* found EAHCA a comprehensive mechanism intended to help the states perform their equal-protection obligations (*id.* at ——, 104 S.Ct. at 3468), in light of which the Court said "we find it difficult to believe that Congress also meant to leave undisturbed the

ability of a handicapped child to go directly to court with an equal protection claim to a free appropriate public education" (*id.* at —— —— ——, 104 S.Ct. at 3469, footnote omitted). Consequently the Court concluded (*id.* at ——, S.Ct. at 3470) where EAHCA "is available" to a handicapped child asserting a right (including one under the Equal Protection Clause) to a free appropriate public education, it provides the *exclusive* remedy. That holding does not provide all the answers (for example, does the inability to recover damages under EAHCA—a remedy potentially available under the Equal Protection Clause and 42 U.S.C. § 1983—render EAHCA not "available" to that extent?), but it is plain William and the class cannot be better off after *Smith* than before. This opinion's dismissal of the equal protection claims stands unimpaired.

Additionally, *Smith*'s discussion of EAHCA's preemption in most cases of Rehabilitation Act remedies (at —— —— ——, 104 S.Ct. at 3471–3474) also confirms this Court's dismissal of William's Rehabilitation Act claim in Opinion III, 572 F.Supp. at 517.

fairly be determined whether the Policy violates EAHCA and

(b) to establish that the class is sufficiently (or at all) numerous.