(Nos. 45273, 45301 cons.

NICHOLAS B. BLASE, Appellant, v. STATE OF ILLINOIS *et al.*, Appellees.—GERALD L. SBARBORO, Appellant, v. STATE OF ILLINOIS *et al.*, Appellees.

*Opinion filed September 25, 1973.*

BERNARD CAREY, State's Attorney, of Chicago (SHELDON GARDNER, Chief of Civil Division, and FREDRIC B. WEINSTEIN, Assistant State's Attorney, of counsel), for appellant Richard J. Martwick.

RICHARD J. TROY, of Chicago, for appellant Nicholas B. Blase.

GERALD L. SBARBORO, *pro se,* appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield (HERBERT L. CAPLAN, Assistant Attorney General, of counsel), for appellees.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

The issue in this case concerns the meaning of the last sentence of section 1 of article X of the constitution of 1970, which reads: "The State has the primary responsibility for financing the system of public education." That provision is a new one in Illinois school law, and the question is whether, as the appellants assert, it requires the State to provide not less than 50% of the funds needed to operate and maintain public elementary and secondary institutions and services, or whether, as the Superintendent of Public Instruction represented by the Attorney General contends, it was intended as a hortatory expression of a goal to be achieved. The issue has been brought to this court on direct appeals under Rule 302(b) (50 Ill.2d R. 302(b)) by the plaintiffs in two actions in the circuit court of Cook County which were first consolidated and then dismissed. Before we consider the substantive issue, certain procedural matters require disposition.

The plaintiff in one of the actions (No. 45273) is Nicholas B. Blase, who sues as a taxpayer and as next friend of his daughter, Marcella Blase, a student, and on behalf of all persons similarly situated. The defendants are the State of Illinois; Michael Bakalis, Superintendent of Public Instruction; School District 207, located in Maine Township, in which Blase and his daughter reside; and Richard M. Martwick, Cook County Superintendent of Schools.

The plaintiff in the other action (No. 45301) is Gerald L. Sbarboro, a taxpayer and resident of the city of Chicago; the defendants are the State of Illinois and Michael Bakalis, Superintendent of Public Instruction.

Both actions were commenced in 1971 while section 26 of article IV of the constitution of 1870 remained in effect. (See Ill. Const. (1970), Transition Schedule, par. 1(e).) That section provided, "The State of Illinois shall never be made defendant in any court of law or equity."

The State of Illinois was therefore improperly joined as a defendant in both complaints.

The defendant Martwick, who was joined as a defendant in the Blase action, actually took a position favoring the plaintiff and was therefore realigned as a plaintiff. The position that Martwick asserted was inconsistent with that taken by the Superintendent of Public Instruction. The School Code provides that the Superintendent of Public Instruction is to review the determinations of the county superintendents, and that in the performance of their duties county superintendents "shall carry out the advice of the Superintendent of Public Instruction." (Ill. Rev. Stat. 1971, ch. 122, pars. 2–3.7, 2–3.8, 3–10, 3–14.7; see, *Board of Education v. Bakalis (1973), 54 Ill.2d 448.*) The Cook County Superintendent of Schools thus had no authority to assert a position contrary to that taken by the Superintendent of Public Instruction, and he should not have been permitted to do so.

It is suggested that the cases do not present a justiciable question, that the court lacked jurisdiction because the issue presented is a "political" one, and also that the actions should not have been entertained because "specific relief through a decree of conclusive character" was not requested. It is apparent, however, that the controversy is real and that the substantial interests involved are practical and financial, rather than "political." The claim of the plaintiffs is that the 1970 constitution requires that a portion of the burden of financing the State's educational system be shifted from one group of taxpayers to another. Contrary positions are asserted on the one hand by the property taxpayers, and on the other by the Superintendent of Public Instruction represented by the Attorney General. The relief prayed in both complaints is a declaration of the invalidity of those provisions of the School Code which relate to the furnishing of State funds to local school districts. We therefore conclude that the controversy is a justiciable

one, of which the court had jurisdiction. By statute a declaratory judgment is authorized "whether or not any consequential relief is or could be claimed." Ill. Rev. Stat. 1971, ch. 110, par. 57.1.

On the merits, the parties dispute the meaning of section 1 of article X of the constitution of 1970, which is captioned "EDUCATION" and which provides:

> "Sec. 1 Goal—Free Schools
>
> A fundamental goal of the People of the State is the educational development of all persons to the limits of their capacities.
>
> The State shall provide for an efficient system of high quality public educational institutions and services. Education in public schools through the secondary level shall be free. There may be such other free education as the General Assembly provides by law.
>
> The State has the primary responsibility for financing the system of public education."

The controversy centers upon the last sentence. The plaintiffs contend that it requires the State to provide not less than 50% of the funds needed to operate the public elementary and secondary school system. Although the words used might be susceptible of that interpretation, an examination of the proceedings of the constitutional convention shows conclusively, in our opinion, that the sentence was intended only to express a goal or objective, and not to state a specific command.

The original proposal submitted to the convention by its education committee contained no provision for an increased State share of the cost of financing public education. (6 Record of Proceedings, Sixth Illinois Constitutional Convention 227.) After it was adopted on first reading, the majority of the Education Committee submitted an amendment which would have provided that "substantially all funds for the operational costs of the free public schools shall be appropriated by the General Assembly for the benefit of the local school districts," and that local school taxes should be limited to 10% of the

amount "received by that district from the General Assembly in that year." (6 Proceedings 295.) The minority of the committee, while favoring increased State support, objected to this proposal because they felt that specific limitations were more properly left to the legislature. This amendment, and others similarly designed to make specific the respective responsibilities of local school districts and the State for educational financing, were defeated. 4 Proceedings 3547, 3550, 3552, 3570.

On second reading of the education article, Delegate Netsch proposed adding the following to the original committee proposal:

> "Financing Public Education. The state has the primary duty to finance the system of public educational institutions and services." 5 Proceedings 4145.

In explaining this amendment, Mrs. Netsch stated:

> "I concede that the language I have put down is, in the Convention's usual fashion, hortatory. I do not believe that it states a legally enforceable duty on the part of the state through the General Assembly or otherwise. I do not intend that it state a legally enforceable duty."

After the proposed amendment had been changed to read, "The state has the primary responsibility for financing the system of public educational institutions and services," and a substitute proposal had been defeated, the Netsch amendment was itself defeated, and the education article was approved on second reading. 5 Proceedings 4145, 4147, 4148, 4149.

Delegate Netsch reintroduced her proposed amendment on third reading. She stated that the proposal "is intended primarily to state the commitment of this Convention that the state should be assuming a greater responsibility for the financing of the public school system." (5 Proceedings 4500-01.) Her explanation continued:

> "As I indicated, this is the same language that the Convention had voted on approximately ten days ago, and it was narrowly defeated at that time. Some of us felt

that it was important enough for this Convention to state what we believe to be a widespread sentiment within the Convention that we should express the feeling that the state should be assuming a larger share and, in fact, the primary responsibility for the financing of the public school system.

\* \* \*

The purpose of including the statement is to put the Convention on record with what I believe is a feeling widely held by the delegates to this Convention that the state, indeed, has the primary responsibility for financing the public school system.

I think our motivations for that are varied and sometimes coalesce. Many of us feel that the property tax has carried too heavy a burden of financing schools and that the only way in which any relief will be obtained is by shifting a larger share to the state level. Many of us also feel that there is great inequality among the various school districts in the state and that only a greater degree of state aid is going to cure that inequality.

I think for those reasons the feeling is that the state should, indeed, assume this primary responsibility for the financing of the public school system. It is not a legally obligatory command to the state legislature. I think it is useful, because I think it is something that can be pointed to every time the question of appropriations from the state to the school districts is at issue. I think this can be cited to them, and it can be explained to them that if this constitution is approved, that the people of this state also share the feeling that the state should be paying a larger share of that burden." 5 Proceedings 4502.

In view of the history of the proposal and the repeated explanations of its principal sponsor, it cannot be said that the sentence in question was intended to impose a specific obligation on the General Assembly. Rather its purpose was to state a commitment, a purpose, a goal. The trial court therefore did not err in dismissing the plaintiffs' complaints and entering judgment for the defendants.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*