WILLIE ELLIOT, a Minor, by his Mother and Next Friend, Dolores Elliot, *et al.*, Plaintiffs-Appellants, *v.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 63062

Opinion filed September 13, 1978.

Ronald Barliant and Elaine Bucklo, both of Devoe, Shadur & Krupp, of Chicago, for appellants.

William J. Scott, Attorney General, of Chicago (Ann Sheldon, Assistant Attorney General, of counsel), for appellees.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

Willie Elliot is a handicapped student enrolled in the public school system operated by the defendant, Board of Education of the City of Chicago. The defendant Board of Education determined that the special

education program of the Chicago Public Schools was inadequate to meet Willie's needs and excluded him from its public schools. Therefore, Willie attends classes at the Potential School for Exceptional Children, a nonpublic school in Chicago. Willie and his mother, Dolores Elliot, filed this matter as a class action in the Circuit Court of Cook County. Their complaint seeks primarily a declaration that section 14—7.02 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 14—7.02) is unconstitutional in that it limits the amount of tuition which the State, through its school districts, must pay for the special education of handicapped students who have been excluded from the public schools and who attend a nonpublic school or special education facility. The complaint also seeks injunctive relief mandating the school districts to pay the full tuition of all handicapped public school students attending nonpublic school or private educational facilities pursuant to section 14—7.02, and damages totaling the difference between the amounts contributed toward the private school tuitions by the school districts and the actual tuitions charged thus far.[1]

Both of the defendants, the Board of Education and Joseph M. Cronin, State Superintendent of Education, moved to dismiss the complaint for failing to state a cause of action. The court allowed the motions and dismissed the complaint with prejudice. When announcing its decision, the court stated:

> "Well, the law provides that where the public school system does not have the facilities for a mentally retarded child, that they will pay up to $2,500 towards that child's tuition.
>
> Now, this Court cannot interfere with how much is to be paid. That is a matter clearly for the legislature.
>
> I can't tell the legislature that you must pay $5,000 or $10,00 [sic] or $20,000. This is a matter for the legislature.
>
> The suit is dismissed."

The plaintiffs seek to reverse the trial court's order dismissing their complaint and to remand the cause for trial. The question of the class action status was not reached in the proceedings in the trial court and, therefore, it is not before us in this proceeding. All facts well pleaded by the complaint are deemed true. *Schreiner v. City of Chicago* (1950), 406 Ill. 75, 92 N.E.2d 133; *People ex rel. Hamer v. Board of Education* (1974), 22 Ill. App. 3d 130, 316 N.E.2d 820.

Willie Elliot began his formal education at Chicago's Orville T. Bright Elementary School in September 1971. In February 1973 the Board of

---

[1] At the outset of this litigation section 14—7.02 of The School Code limited the school districts' contributions to $2000 per student for each school year. The section has been amended several times in the interim. This opinion cites the text of P.A. 80-254 which sets the authorized contribution at a maximum of $2500 per student per school year. P.A. 80-254, §1, effective October 1, 1977, Ill. Rev. Stat. 1977, ch. 122, par. 14—7.02.

Education of the City of Chicago excluded Willie from further attendance at Bright because his handicap was such that he could no longer benefit from the programs available within the public school system. Pursuant to section 14—7.02 of the School Code, the Board of Education certified to the then State Superintendent of Public Instruction[2] that Willie was a handicapped student and that the public schools of the City of Chicago could not meet his educational needs. Following his exclusion from the public schools and the certification to the superintendent it was arranged for Willie to attend classes at the Potential School for Exceptional Children, a State-approved nonpublic school. From February 1973 to the present Willie's mother, Dolores Elliot, has been required to pay the difference between the tuition charged by the Potential School, $2800 per school year, and the amount contributed by the Board of Education pursuant to section 14—7.02.

Each year the Chicago Board of Education receives reimbursement from the State for its expenditures toward Willie's tuition at the Potential School. Reimbursement is limited, however, to an amount computed by reference to the formula set forth in section 14—7.02. Provision is also made for the Board of Education to pay up to an additional $500 per year for summer school programs for Willie and to provide necessary transportation expenses to and from the Potential School. Reimbursement from the State for these expenditures is also limited by law.

Local and State school officials have made similar exclusions of handicapped children from the public schools and these students were placed in private educational facilities. Answers to interrogatories filed by Dr. Michael J. Bakalis, former State Superintendent of Public Instruction, set the number of applications for such private placements at 6635 as of May 1, 1974. A substantial number of these applications result in tuition charges in excess of the amount the school districts are authorized to contribute. This excess becomes the obligation of the parents and guardians of the handicapped students involved.

The plaintiffs challenge the constitutionality of section 14—7.02 of the School Code which provided:

> "If because of his handicap the special education program of a district is unable to meet the needs of a child and the child attends a non-public school or special education facility, a public out-of-state school or a special education facility owned and operated by a county government unit on the effective date of this amendatory Act of 1975 that provides special educational services required by

---

[2] This office was abolished by the Illinois Constitution of 1970. Replacing the Superintendent of Public Instruction is the State Board of Education which appoints the State Superintendent of Education. Ill. Const. 1970, art. X, §2; Ill. Rev. Stat., ch. 122, par. 1A—4.

the child and is in compliance with the appropriate rules and regulations of the State Superintendent of Education, the school district in which the child resides shall pay the actual cost of tuition charged the child by that non-public school or special education facility, public out-of-state school or $2,500 per year, whichever is less, and shall provide him any necessary transportation. However, transportation shall not be provided to a residential school. If such non-public school or special education facility, public out-of-state school or county special education facility provides a summer school program, then the tuition charged the child for the summer program or $500 per summer, whichever is less, may also be paid together with transportation by the school district in which the child resides. A school district making tuition payments pursuant to this Section is eligible for reimbursement from the State for the amount of such payments actually made in excess of the district per capita tuition charge for students not receiving special education services. Where summer school tuition payments are made the school district shall be eligible for reimbursement from the State for the amount of such payments actually made in excess of $100 per student. Such reimbursement shall be paid in accordance with Section 14—12.01 for each school year ending June 30, to the board of each such school district, through the regional superintendent of schools, on the warrant of the State Comptroller.

If it otherwise qualifies, a school district is eligible for the transportation reimbursement under Section 14—13.01 and for the reimbursement of tuition payments under this Section whether the non-public school or special education facility, public out-of-state school or county special education facility, attended by a child who resides in that district and requires special educational services, is within or outside of the State of Illinois. However, a district is not eligible to claim transportation reimbursement under this Section unless the district certifies to the State Superintendent of Education that the district is unable to provide special educational services required by the child for the current school year.

Nothing in this Section authorizes the reimbursement of a school district for the amount paid for tuition of a child attending a non-public school or special education facility, public out-of-state school or county special education facility unless the school district certifies to the State Superintendent of Education that the special education program of that district is unable to meet the needs of that child because of his handicap and the State Superintendent of

Education finds that the school district is in substantial compliance with Section 14—4.01." (Ill. Rev. Stat. 1977, ch. 122, par. 14—7.02.)

The challenge is first premised on the right to free public school education through the secondary level as expressed in the education article of the State Constitution (Ill. Const. 1970, art. X, §1). Secondly, the challenge presents claims under the equal protection provisions of the Federal and State constitutions (U.S. Const. amend. XIV, §1; Ill. Const. 1970, art. I, §2). The plaintiffs' equal protection analysis prohibits the classifications of handicapped students and their parents or guardians in such a manner as to deny these students free education and to require the parents or guardians to pay tuition. (See *Mills v. Board of Education* (D.D.C. 1972), 348 F. Supp. 866; *Pennsylvania Association for Retarded Children v. Commonwealth of Pennsylvania* (E.D.Pa. 1971), 334 F. Supp. 1257; (E.D.Pa. 1972), 343 F. Supp. 279. See also Krass, *The Right to Public Education for Handicapped Children: A Primer for the New Advocate,* 1976 U. Ill. L.F. 1016.) It is our opinion that this cause can be resolved by our interpretation of the education article of the State Constitution and that the other constitutional issues presented by the plaintiffs need not be determined in this appeal. The constitutional text to be construed, therefore, is the following:

"Section 1. GOAL—FREE SCHOOLS

A fundamental goal of the People of the State is the educational development of all persons to the limits of their capacities.

The State shall provide for an efficient system of high quality public educational institutions and services. *Education in public schools through the secondary level shall be free.* There may be such other free education as the General Assembly provides by law." (Emphasis added.) Ill. Const. 1970, art. X, sec. 1.

The defendants contend that the proper construction of this text is found in cases interpreting the education article of the Illinois Constitution of 1870 which provided that "[t]he General Assembly shall provide a thorough and efficient system of free schools, whereby all children of this State may receive a good *common school education.*" (Emphasis added.) (Ill. Const. 1870, art. VIII, §1.) Admittedly, judicial construction of the prior provision limited the State's obligation to the maintenance of a tuition free "common school" system. In *People ex rel. Leighty v. Young* (1923), 309 Ill. 27, 139 N.E. 894, the court stated:

"The constitutional provision is a mandate to the legislature and a limitation on the exercise of the power. [Citation.] The mandate is to provide a thorough and efficient system of schools, and the limitations are that they shall be free to all children of the State and

such that all the children may receive a good common school education. Whether such schools shall be provided is not left to the discretion of the legislature. * * * The legislature has unquestioned power and discretion, within the limits stated, to determine what a common school education shall be, but whatever that determination is, there is no discretion in the legislature to provide a system which will deprive any children of the State of the opportunity to obtain such an education." (309 Ill. 27, 33-35.)

In 1909 our supreme court determined that the exercise of legislative discretion in creating public high schools incorporated these schools within the constitutional meaning of "common schools." (*People v. Moore* (1909), 240 Ill. 408, 88 N.E. 979.) Nevertheless, the legislature was left free to determine the content of the curriculum to be taught by the public schools and to exclude from that content the instruction of special or handicapped students *incapable of benefiting* from the common school course of studies. *Department of Public Welfare v. Haas* (1958), 15 Ill. 2d 204, 154 N.E.2d 265.[3]

■■ Viewing the present education article in light of the construction of the former article, the defendants argue that section 14—7.02 manifests the intent of the General Assembly to exclude from the free public school curriculum the instruction of handicapped students like Willie Elliot. Such an exclusion, it is argued, is well within the constitutional power of the legislature to determine the meaning of a common school education. Were we constrained to review the present controversy by reference to the Constitution of 1870, this argument might be found compelling. However, it is our obligation to refer to the requirement of the existing constitution which we find to be broader in its mandate of free education. As a general statement of this mandate, this court has said that "the State had a constitutional duty to provide and the public has a right to receive an efficient, high quality educational system." (*Allen v. Maurer* (1972), 6 Ill. App. 3d 633, 640, 286 N.E.2d 135.) No discretion is left with the legislature to deny this system to the public or to require any Illinois resident to pay for this system through the secondary level except by means of taxation, or by fees for items not included within the concept of tuition. See *Hamer v. Board of Education* (1973), 9 Ill. App. 3d 663, 292 N.E.2d 569.

As we have indicated, the present constitution establishes an entitlement broader than the former provision which mandated only free

---

[3] The *Haas* decision concerned an institutionalized mentally retarded child whom the record revealed to have been deemed uneducable. Some commentators have noted that article X, section 1 of the Constitution of 1970 supersedes the opinion in *Haas*. Helman & Whalen, Constitutional Commentary, Ill. Ann. Stat., Ill. Const. 1970, art. X, sec. 1, at 256 (Smith-Hurd 1971).

common school education. Read within the constitutional history this entitlement incorporates programs of instruction other than the standard course of study established in the public school system. Reporting on the effect of the goals announced in the first paragraph of section 1 of the Education Article, the Committee on Education of the Sixth Illinois Constitutional Convention stated:

> "[T]he objective that all persons be educated to the limits of their capacities *would require expansion beyond the traditional public school programs.* It recognizes the need of the person with a physical handicap or mental deficiency who nevertheless is educable." (Emphasis added.) (6 Record of Proceedings, Sixth Illinois Constitutional Convention 234 (hereinafter cited as Proceedings).)

The discussion on the floor of the convention further emphasized the intent of the article's framers that the goals of the first paragraph be given operative effect in mandating the State's commitment to education as a paramount concern. For example, Delegate Paul E. Mathias, Chairman of the Committee on Education, pointed out, "we want opportunities beyond the elementary and secondary schools—opportunities for the handicapped as well as the normal individual." 2 Proceedings 762.

The language of the first paragraph of section 1 has been construed as "a statement of general philosophy, rather than a mandate that certain means be provided in any specific form." (*Pierce v. Board of Education* (1977), 69 Ill. 2d 89, 370 N.E.2d 535.)[4] Nevertheless, we are guided by the mandatory wording of paragraph 2 of section 1. Addressing himself to the first sentence of the second paragraph, Delegate Samuel A. Patch, a member of the Committee on Education, noted, "The State is mandated to provide a system that is thorough, complete, and useful to all the people of Illinois." (2 Proceedings 764.) That such a thorough, complete and useful education system was intended to refer to the second sentence of the paragraph requiring that "[e]ducation in public schools through the secondary level shall be free," is manifest in the remarks of Delegate William D. Fogal when he compared the proposed article to that contained in the Constitution of 1870. 2 Proceedings 767-68.

---

[4] The defendants have also relied on *Blase v. State* (1973), 55 Ill. 2d 94, 302 N.E.2d 46, which resulted in a hortatory construction of the third paragraph of section 1 of the education article: "The State has the primary responsibility for financing the system of public education." The supreme court in *Blase* held that the third paragraph imposed no legally enforcible obligation on the State to contribute the major proportion of funds for the support of local public schools. However, the opinion is clear that the hortatory nature of paragraph 3 was explicitly intended by the Constitutional Convention, and it cites at length from passages of the Proceedings which indicate this intent. No such intent or passages are to be found regarding the construction of the second paragraph.

Further analysis reveals that the School Code itself also provides support of this proposition. Article XIV of the Code (Ill. Rev. Stat. 1977, ch. 122, par. 14—1.01 *et seq.*), as well as rules and regulations promulgated by the Illinois Office of Education (Rules and Regulations to Govern the Administration and Operation of Special Education (effective August 23, 1976)), acknowledge the role of the free public school system in providing for the educational development of all handicapped students enrolled by the school districts of the State. As a matter of legislative and administrative policy this role is exercised by meeting the educational needs of the handicapped student through programs incorporating the least restrictive curricula and facilities possible. Only as a last resort are handicapped students to be removed from the public school environment and placed in private special educational facilities. Yet, when such removal and special placement are deemed necessary, no determination is made that a student so removed and placed is uneducable. Indeed, nothing in the record before us or in the argument of counsel has suggested that Willie Elliot cannot be educated.

■■ The School Code and another set of regulations promulgated by the State Superintendent of Education (Rules and Regulations for Approval of Nonpublic Facilities Educating Handicapped Students Under section 14—7.02 of the School Code of Illinois (April 1977)) also suggest that private special educational facilities providing instruction and training to handicapped students pursuant to section 14—7.02 are but contracted extensions of existing public school systems. In such a capacity these private facilities lose some of their autonomy with respect to the programs designed to foster the educational development of students excluded from the public schools. The Report of the Committee on Education of the Sixth Illinois Constitutional Convention states: "* * * whatever educational programs are established as part of the public school system through the secondary level be free of tuition charges for resident pupils." (6 Proceedings 235.) It is our opinion that the legislature has established the education of handicapped students as part of the responsibility of the public school system. Furthermore, the education of handicapped students in private special educational facilities pursuant to section 14—7.02 of the School Code is also a program established as part of the public school system. So established, such education must be free of tuition charges for Illinois residents through the secondary level.

■■ This cause was dismissed with prejudice due to the fiscal considerations involved in State financing of special education. Properly perceived, our holding that the Illinois Constitution establishes the right of handicapped persons to tuition-free education through the secondary level does not interfere with the constitutional authority of the General

Assembly to allocate limited public funds. Nevertheless, the effect of this decision entails the prohibition of requiring parents and guardians to pay tuition for the education of their handicapped children.[5]

■ For the reasons stated above, we find section 14—7.02 of the School Code violates the provisions of the education article of the Illinois Constitution of 1970, in that it deprives Willie Elliot of a tuition-free education through the secondary level, and that it requires Dolores Elliot to pay tuition for the education of her handicapped son through the secondary level. Therefore, the order of the Circuit Court of Cook County dismissing this cause with prejudice is reversed, and the cause is remanded to that court for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

JIGANTI, P. J., and SIMON, J., concur.

---

[5] An aspect of this problem which does not appear of record, nor in the arguments of counsel, concerns Illinois' conformity with the provisions of the Federal Education for All Handicapped Children Act of 1975 (P.L. 94-142, 89 Stat. 775, 20 U.S.C.A. §§1401 et seq. (1977 Supp.)). (See also Krass, *The Right to Public Education for Handicapped Children: A Primer for the New Advocate*, 1976 U. Ill. L.F. 1016, 1063-77.) Pursuant to this Act, Congress has made available to state and local governments money for the funding of educational programs for handicapped students. After September 1, 1978, funding pursuant to the Act will be allocated only to States which provide full payment of the tuition costs of *all* handicapped students between the ages of at least 5 and 18 years enrolled by the public school systems, including handicapped students placed outside the public schools under programs such as those contemplated by section 14—7.02 of the School Code. 20 U.S.C.A. §§1401(16), (18), 1411, 1412, 1413(a)(4) (1977 Supp.).

The recently concluded session of the 80th General Assembly has passed legislation which once again amends section 14—7.02 of the School Code. (S.B. 395, as amended, passed June 30, 1978.) On August 25, 1978, this legislation became law and went into effect with the Governor's signature. (P.A. 80-1405.) The new section 14—7.02 provides for full tuition payments for handicapped students attending private facilities, and formally brings the State into compliance with the funding provisions of the Federal Act. This amendment of State law, however, does not moot the present controversy, at least to the extent the declaratory judgment sought here is a prerequisite to the plaintiffs' claims for damages due to tuitions already charged and paid by reason of the former statutory limitations we now hold to be inconsistent with the State constitution. (*Powell v. McCormack* (1969), 395 U.S. 486, 23 L. Ed. 2d 491, 89 S. Ct. 1944.) Moreover, the issue raised by this case is one of substantial public interest upon which an authoritative determination for future guidance of public officials is desirable, particularly in view of the possibility of future recurrence of the issue in the event the Federal funding program is discontinued or funds for the State's share of the new program are not appropriated. *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 104 N.E.2d 769, *cert. denied* (1952), 344 U.S. 824, 97 L. Ed. 642, 73 S. Ct. 24; *Ballew v. Edelman* (1975), 34 Ill. App. 3d 490, 340 N.E.2d 155.