**JOHN A., By and Through his mother and next friend, VALERIE A., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Donald GILL, Illinois Superintendent of Education, Defendant.**

No. 81 C 2456.

United States District Court,
N.D. Illinois, E.D.

April 12, 1983.

---

Michael D. Young, Legal Asst. Foundation, Chicago, Ill., Gerard Brost, Guardianship & Advocacy Comm., Chicago, Ill., for plaintiffs.

Tyrone C. Fahner, Atty. Gen., Paul Millichap, Asst. Atty. Gen., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This action is brought pursuant to the Education for all Handicapped Children Act of 1975, 20 U.S.C. §§ 1401 *et seq.* ("EAHCA"), and its implementing regulations; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the due process clause of the Fourteenth Amendment to the United States Constitution and the Illinois Handicapped Children's Act, Ill.Rev.Stat., ch. 122, § 14–1.01, *et seq.* Plaintiffs, John A., a minor, and his mother, Valerie, seek declaratory and injunctive relief against defendant, Donald Gill, Illinois Superintendent of Education. Plaintiffs claim that John has not received a free appropriate public education to which he is entitled because of delays by defendant in resolving the state level administrative appeal regarding the appropriate placement for him. Plaintiffs, on behalf of themselves and a purported class of all handicapped children not receiving a free, appropriate education by reason of these delays, request a declaratory judgment that defendant's conduct violates their rights under the aforementioned statutes and constitutional provision. Plaintiffs also request that defendant be enjoined to issue decisions promptly on any appeals pending for more than thirty days since the filing of this complaint and to issue all future decisions on appeals within thirty days from the date the defendant receives a request for review.

Defendant seeks dismissal of this action on the following five grounds: that the EAHCA creates no substantive rights to a free appropriate public education, that the EAHCA creates no procedural rights to a final state agency decision within thirty days, that § 504 of the Rehabilitation Act creates no substantive rights to a free appropriate public education, that due process does not impose such strict time limits on the state in rendering final decisions on the appropriateness of a handicapped child's placement, and that plaintiffs' state law claim must be dismissed, for lack of pendent jurisdiction, in the absence of any cognizable federal claim.

For the reasons stated herein, defendant's motion to dismiss is denied.

FACTS[1]

Plaintiff, John A., was, on the filing of this complaint, a twelve-year old child diagnosed as having severe emotional and behavioral disorders. In the fall of 1980, Lyons Elementary School District # 103, the school district responsible for John's special education, advised his mother that it wanted to place him in a self-contained classroom for behavior-disordered students. John's mother objected to the proposed placement because she had been advised by experts who had examined John that the appropriate placement for him would be in a highly structured residential program.

Pursuant to the EAHCA, 20 U.S.C. § 1415(b)(1)(E), and the Illinois Handicapped Children Act, Ill.Rev.Stat., ch. 122, § 14–8.02, John's mother requested an administrative hearing to determine the appropriate placement for John. A hearing

---

1. On this motion to dismiss the facts stated in plaintiffs' complaint are, of course, accepted as true.

was held, and on November 20, 1980, the hearing officer determined that the school district's proposed placement was not appropriate to John's needs. The officer ruled that a "highly structured residential facility with intense support systems" was the appropriate placement for John. (Compl., Ex. A.)

On December 5, 1980, the Lyons School District requested a review of the hearing officer's determination pursuant to the procedural provisions of the EAHCA and the Illinois statute, and urged that the appeal "progress with all possible speed." (Compl., Ex. B.) Defendant acknowledged receipt of the appeal letter and requested a transcript of the hearing and John's records. By January 20, 1981, defendant had received all of the relevant documents, but as of May 1, 1981, the date plaintiffs' complaint was filed, defendant had not yet rendered a decision on the appeal nor had he informed the parties as to the disposition of the appeal.

According to plaintiffs, as a result of the delay in the appeal, John had not been placed in the appropriate educational setting. Plaintiffs further allege that John's behavior and emotional problems had deteriorated to the extent that he was admitted to the Madden Mental Health Center in March of 1981. Plaintiffs' claim that the hospital is an inappropriate placement and has had an injurious effect upon John.

## PRELIMINARY JURISDICTIONAL QUESTIONS

■ Before reaching the merits of defendant's motion to dismiss, a threshold question of jurisdiction must be addressed.[2] Under Article III of the United States Constitution the judicial power of the courts extends only to cases or controversies between the parties in an action. *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). When a case or controversy ceases to exist between the parties the dis-

pute becomes moot, and a court, as a general rule, may not entertain the action.

■ In *Sosna,* the Supreme Court established two exceptions to the mootness doctrine. First, if the plaintiff sues on behalf of a class and the suit is properly certified as a class action, the class acquires a legal status separate from that of the named plaintiff. 419 U.S. at 399, 95 S.Ct. at 557. Thus, although the named plaintiff's claim has been resolved, a class action will not be dismissed if the controversy remains live as to the members of the class he was certified to represent. *Id.* at 402, 95 S.Ct. at 558–59. Second, where a claim is by nature time-bound in the sense that it will inevitably become moot before it can be resolved through normal judicial processes,[3] dismissal for mootness can be avoided under the "capable of repetition yet evading review" exception. *Id.* at 400–01, 95 S.Ct. at 558.

In the present case the controversy between the named plaintiffs and defendant has been resolved. As stated in a June 19, 1981 letter from plaintiffs' attorney to the court withdrawing their motion for a preliminary injunction, "It has become unnecessary to pursue this motion as defendant has provided the relief requested therein." Since plaintiffs' claims are thus moot, the court must consider whether they fit into either of the aforementioned exceptions.

■ This case does not fall within the class action exception because no class has been certified. *See Indianapolis School Commissioners v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975) (purported class action dismissed where claims of named plaintiffs were moot and plaintiffs failed to comply with requirements of Fed. R.Civ.P. 23(c)). *But see Susman v. Lincoln American Corp.,* 587 F.2d 866 (7th Cir.1978), *cert. denied,* 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 775 (1980), (suggesting that unilat-

---

**2.** Neither plaintiffs nor defendant has argued the mootness question. However, since mootness is a jurisdictional issue, going to the power of the court to hear the merits of a case, it cannot simply be ignored.

**3.** In *Sosna,* plaintiff was challenging an Iowa law establishing a one-year residency requirement as a prerequisite to initiating divorce proceedings in the state courts.

eral action by defendants mooting named plaintiffs' claims prior to class certification does not require dismissal of action). However, the "capable of repetition yet evading review" exception does apply to the named plaintiff.[4] John was twelve years old in 1981 when this complaint was filed. He is therefore presently fourteen years old with approximately three to four years remaining in the state educational system. There is no indication that the state has changed its policies regarding decisions on appeals challenging educational placements. Under these circumstances, where the challenged procedures are still operative, plaintiff's status as a handicapped student makes it likely that those procedures may be utilized in the future, and the time limits inherent in his claims raise doubts as to the availability of judicial mechanisms to resolve the controversy, the court will retain jurisdiction over this technically moot dispute. *See Sherry v. New York State Ed. Dept.,* 479 F.Supp. 1328, 1334–35 (W.D.N.Y.1979)

### THE EAHCA CLAIMS

The EAHCA offers states federal financial assistance in providing educational services for handicapped children. In order to be eligible for such funding recipient states must, *inter alia,* develop a plan to assure that "a free appropriate public education will be available for all handicapped children," 20 U.S.C. § 1412(2)(B), and "establish and maintain procedures in accordance with [the requirements of the EAHCA] . . . to assure that handicapped children and their parents . . . are guaranteed procedural safeguards with respect to the provision of free appropriate public education . . . ." 20 U.S.C. § 1415(a); *see* 20 U.S.C. § 1412(5)(A). The EAHCA's procedural requirements are set forth in § 615 of the Act, 20 U.S.C. § 1415. Recipient states must provide "an opportunity to present complaints with respect to any matter relating to the identification, evaluation or educational placement of the child, or the

provision of a free appropriate education to such child." 20 U.S.C. § 1415(b)(1)(E). Whenever such a complaint is received the local educational agency involved must conduct an impartial due process hearing. 20 U.S.C. § 1415(b)(2). Any party to this hearing may appeal a decision to the proper state education agency which, in turn, must conduct an impartial review of the local agency's decision. 20 U.S.C. § 1415(c). If any of the parties is dissatisfied with the final decision by the state education agency, judicial review may be obtained. During the pendency of these proceedings the handicapped child is to remain in his then current educational placement unless the parties agree otherwise. 20 U.S.C. § 1415(b)(3).

The EAHCA imposes certain duties on the federal Commissioner of Education. Under § 617 of the Act, 20 U.S.C. § 1417(b), "In carrying out the provisions of this subchapter, the Commissioner . . . shall issue . . . amend, and revoke, such rules and regulations as may be necessary." Pursuant to that duty, the Commissioner issued regulations requiring that

> The state educational agency shall insure that not later than 30 days after receipt of a request for review:
>
> > (1) a final decision is reached in the review; and
> >
> > (2) a copy of the decision is mailed to each of the parties.

34 CFR § 300.512.

The State of Illinois, a recipient of federal funds under the EAHCA, has provided for the required administrative review in a statute which essentially tracks the language of § 1415 and the regulation. Ill. Rev.Stat. ch. 122, § 14–8.02 (1981). In particular, the statute requires that "(i) No later than 30 days after perfection of the appeal by receipt of the record on appeal, a final decision shall be reached and a copy mailed to each of the parties." [5]

---

**4.** Since there is no certified class, the court may examine only the possibility of recurrence as to the named plaintiff, who is the only party properly before the court at the present time.

*See Gomes v. Rhode Island Interscholastic League,* 604 F.2d 733, 736 (1st Cir.1979).

**5.** There is a discrepancy between the federal regulation and the state statute. The former

Plaintiffs' basic claim under the EAHCA is that John was denied a free appropriate education by virtue of the state's failure to satisfy its obligation to render a final decision on his complaint within thirty days. Defendant contends that the EAHCA creates no substantive right to a free appropriate education and no procedural guarantee that appeals regarding education placements will be processed expeditiously, much less within thirty days. Although plaintiffs' EAHCA claim is essentially procedural in nature, this court considers and rejects both of defendant's arguments.[6]

Defendant relies on three recent cases to support his contention that the EAHCA does not grant substantive rights to handicapped children. In *McCowan v. Hahn,* No. 78 C 4234 (N.D.Ill. July 27, 1981), Judge Getzendanner concluded, based on the language and legislative history of the EAHCA, that the Act creates only procedural rights to protect already existing state-created substantive rights to an education, and that the plaintiff therefore could not challenge the merits of his educational placement in federal court. This court, however, finds the analysis in *Parks v. Pavkovic,* 536 F.Supp. 296 (N.D.Ill.1982) and *William S. v. Gill,* 536 F.Supp. 505 (N.D.Ill.1982), more persuasive. In both *Parks* and *William S.,* the plaintiffs challenged the state's refusal to pay certain educational expenses, claiming violation of their right to a free appropriate education under the EAHCA. Defendants contended that, since the EAHCA creates no substantive rights, plaintiffs had no private right of action to question the merits of state administrative decisions.

Judge Marshall, in *Parks,* found that the EAHCA explicitly creates judicially enforceable rights to a free appropriate education. The court based its finding on the language of the EAHCA, which provides

handicapped children and their parents with "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." 20 U.S.C. § 1415(b)(1)(E). According to Judge Marshall, "[s]ince the statute is phrased in the alternative, it is clear that the complaint can be addressed solely to the alleged failure to provide a free appropriate public education." 536 F.Supp. at 301.

Judge Marshall also relied on the Seventh Circuit's decision in *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981). In *Anderson,* the court, though dealing primarily with another issue—whether a damage remedy was available under the EAHCA—gave some guidance as to the contours of rights created by the Act. It read the "all appropriate relief" language of § 615(e)(2), 20 U.S.C. § 1415(e)(2), as granting district courts the power to hear questions of educational placement on the merits and to exercise "wide latitude to fashion an individualized educational program for the child." *Id.* at 1211.

In *William S. v. Gill, supra,* Judge Shadur relied on the *Parks* analysis to conclude that EAHCA creates a private right of action to enforce its substantive guarantees of a free appropriate education and related services. Of course, the question in *Parks, William S.,* and *Anderson* was not the existence of substantive rights under the EAHCA, but, rather, the availability of a private right of action or a particular remedy to enforce those rights. However, in order to answer the latter questions affirmatively, a court must find that the statute creates substantive rights. *Cf. Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1978) (existence of an implied private right of action depends, in part, on whether "the

---

focuses on the state agency's receipt of a *request* for review while the latter ties decision-making to receipt of the *record* on appeal. The significance of the discrepancy is apparent from the facts of this case which show that defendant did not even receive the record until more than thirty days after the initial request for review. Defendant does not rely on this discrepancy, however, and whether the differ-

ing language of the regulation and the statute can somehow be reconciled thus need not be decided at this stage of the proceedings.

**6.** Whether John has substantive rights under the EAHCA will affect the merits of his due process claim, discussed below.

statute create[s] a federal right in favor of the plaintiff.") This court therefore concludes that those decisions constitute persuasive authority for the proposition that the EAHCA creates substantive rights.

■ The court finds additional support for its view that the EAHCA creates substantive rights in the weight of recent case authority, which recognizes that the EAHCA is more than merely a funding statute providing procedural protections. As stated in *Gladys J. v. Pearland Independent School District,* 520 F.Supp. 869 (S.D.Tex.1981), the EAHCA is "more than a funding statute *simpliciter.* For state and local agencies, the Act is a source of funds and obligations." *Id.* at 873. "[T]he Act is a source of *a federal statutory right* 'to a free appropriate education' in every state electing to receive financial assistance under its auspices." *Id.* at 874.[7]

Defendant also relies upon two recent Supreme Court decisions to support his claim that the EAHCA creates no substantive rights. In *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), plaintiffs challenged conditions at a state mental institution as violative of § 111(1) and (2) of the Developmentally Disabled Assistance and Bill of Rights Act of 1975 ("DDA"), 42 U.S.C. § 6010(1) and (2). The Supreme Court concluded that the statutory sections involved created no substantive rights enforceable against the states either in absolute terms or in the context of federal funding. According to the Court, Congress can create absolute substantive rights only through its power to enforce the guarantees of the Fourteenth Amendment, and the legislative history of § 6010 failed to show the requisite intent to act pursuant to such power. *Id.* at 15–17, 18–22, 101 S.Ct. at 1538–40, 1540–42.

Similarly, the Court rejected the contention that § 6010, as part of legislation passed pursuant to Congress' spending power, creates substantive rights imposed upon the states as a condition to receiving federal funds. The court likened legislation passed pursuant to the spending power to a contract. *Id.* at 16, 101 S.Ct. at 1539. In return for funds, states must agree to comply with federally-imposed conditions. *Id.* These conditions, however, must be explicitly and unambiguously set forth in order for substantive rights to be created. The court held that the "findings" stated in § 6010 failed to meet this criterion in light of the very specific conditions on the grant of federal funds set forth in other sections of the DDA. *Id.* at 22–23, 101 S.Ct. at 1542–43.

The second decision on which defendant relies is *Board of Education of the Hendrick Hudson Central School District v. Rowley,* —— U.S. ——, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), in which the Supreme Court held that the right to a free appropriate education created by the EAHCA did not impose upon the states a duty to provide all educational services which would maximize a handicapped child's potential. Defendant points to footnote 26 of the *Rowley* opinion, in which the Court buttressed its view that EAHCA created no right to all educational services necessary to maximize academic potential by noting that Congress had not clearly and unambiguously made such a right a condition of the receipt of federal funds as required by *Pennhurst.* Defendant contends that *Pennhurst* and *Rowley* establish that the EAHCA was passed pursuant to Congress' spending power and that the Act does not clearly condition the receipt of federal funds on the provision of such rights.

Whether the EAHCA was passed pursuant to Congress' spending power or its

---

**7.** Other courts have either explicitly or implicitly found that the EAHCA creates substantive rights. *See Tokarcik v. Forest Hills School District,* 665 F.2d 443 (3d Cir.1981); *Kruelle v. New Castle County School District,* 642 F.2d 687 (3d Cir.1981); *Tatro v. University of Texas,* 625 F.2d 557 (5th Cir.1980); *Department of*

*Education v. Katherine D.,* 531 F.Supp. 517 (D.Hawaii 1982); *Association for Retarded Citizens in Colorado v. Frazier,* 517 F.Supp. 105 (D.Colo.1981); *Larry P. v. Riles,* 495 F.Supp. 926 (N.D.Calif.1979); *Boxall v. Sequoia Union School District,* 464 F.Supp. 1104 (N.D.Calif. 1979).

Fourteenth Amendment power is open to question. Although the *Rowley* Court did mention the standard for a spending power analysis in a footnote, it analyzed the EAHCA in equal protection terms. The Court defined the boundaries of a free appropriate public education consistent with the equal protection clause of the Fourteenth Amendment [8] because the legislative history of the EAHCA indicated that Congress sought, in enacting the EAHCA to "provide assistance to the States in carrying out their responsibilities under . . . the Constitution of the United States to provide equal protection of the laws." 102 S.Ct. at 3046–47 (quoting legislative history). Implicit in the Court's reasoning is the finding that the EAHCA was passed pursuant to Congress' power to enforce the Fourteenth Amendment. *See also Parks v. Pavkovic,* 536 F.Supp. at 307–08.

Even if this court were to agree, however, that the EAHCA was passed pursuant to the spending power, we would find that the *Pennhurst* standard has been met and that the EAHCA creates substantive rights in plaintiffs. Congress clearly and unequivocally conditioned the receipt of EAHCA funds upon state compliance with certain requirements. Section 612 of the EAHCA states:

> In order to qualify for assistance under this subchapter in any fiscal year, a state shall demonstrate . . . that the following conditions were met:
>
> > (1) The State has in effect a policy that assures all handicapped children the right to a free appropriate public education.

20 U.S.C. § 1412. *See William S. v. Gill,* 536 F.Supp. at 510–11 (finding *Pennhurst* inapplicable because provision of a free appropriate education is an express condition for receipt of funds.)

■ Defendant's challenge to plaintiffs' procedural claim under EAHCA is also without merit. As noted above, federal regulations require the state to issue a final decision on an appeal no later than thirty days from receipt of a request for review. 34 C.F.R. § 300.512(b). Thus, unless this regulation can for some reason be said to have no legal effect, plaintiffs' allegation of failure to comply with the rule states a cognizable claim.

In *McCowan v. Hahn, supra,* the court, relying on the distinction between substantive and interpretive rules drawn in *Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), concluded that the thirty-day rule creates no rights on behalf of handicapped children. Slip op. at 11–12. This court disagrees with the *McCowan* decision.

■ As Judge Getzendanner recognized, only those regulations which affect individual rights and obligations can be said to have the force and effect of law. Unlike Judge Getzendanner, this court believes that the EAHCA creates substantive rights to a free appropriate education. Moreover, there can be no question that the EAHCA also creates certain procedural rights concerning review of local educational agency decisions. The thirty-day rule defines the contours of plaintiffs' statutory procedural rights and clearly affects the right to a free appropriate education by limiting the length of time a child will stay in an allegedly inappropriate placement. This court does not see how such a regulation can be characterized as a rule of "agency organization, procedure or practice," *Chrysler Corp. v. Brown,* 441 U.S. at 301, 99 S.Ct. at 1717, thus lacking the force of law.

■ The legal effect of a particular regulation also depends on whether it falls within the scope of the statutory grant of rulemaking authority and whether it was promulgated in conformity with procedural requirements. *Chrysler Corp. v. Brown,* 441 U.S. at 302–03, 99 S.Ct. at 1717–18. Both requirements are met here.

The procedural prerequisites for agency rule-making are found in § 4 of the Admin-

---

**8.** The Supreme Court stated that the EAHCA was designed only to provide a "basic floor of opportunity" consistent with equal protection. Equal protection, according to the Court required no more than equal access. 102 S.Ct. at 3048.

istrative Procedure Act, 5 U.S.C. § 553, which requires administrative agencies to give general notice of proposed rule-making and an opportunity for interested parties to comment whenever the proposed rule is substantive. *See Haddon Township Board of Education v. New Jersey Department of Education,* 476 F.Supp. 681 (D.N.J.1979). Before the regulations under the EAHCA were drafted the Office of Education carried out a massive effort to obtain comments and suggestions for promulgating the regulations. 42 Fed.Reg. 42474 (1977). Approximately 2200 individuals participated in meetings concerning development of the regulations. *Id.* The Office of Education also convened a group of 170 people to write concept papers for eventual use in writing the regulations under the EAHCA.

█ As for the Commissioner's statutory authority to promulgate § 300.512, when Congress has delegated authority to promulgate rules rather than making the rules itself, the rules adopted by the administrative agency, as a general matter, have the full force and effect of law. *Roy v. Secretary of Health and Human Services,* 512 F.Supp. 1245, 1252 (C.D.Ill.1981). Congress did just that in § 617 of the EAHCA, 20 U.S.C. § 1417(b), when it delegated the authority and duty to promulgate regulations to the Commissioner of Education and the Secretary of Health, Education and Welfare.

Defendant asserts, however, that the thirty-day rule exceeds the agency rule-making authority granted in the EAHCA because it goes beyond any substantive obligation contained in the EAHCA itself. Defendant relies upon two cases, *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) and *American Public Transit Association v. Lewis,* 655 F.2d 1272 (D.C.Cir.1981), to support this proposition.

In *Southeastern Community College,* regulations under the Rehabilitation Act which required institutions to modify their pro-grams to accommodate handicapped persons were construed narrowly by the Court. Reading the regulations more broadly to include program adjustments beyond those necessary to eliminate discrimination against the handicapped would, according to the Court, raise grave doubts about their validity because "they would constitute an unauthorized extension of the obligations imposed by [the] statute." *Id.* 442 U.S. at 410, 99 S.Ct. at 2369.

In *American Public Transit Association,* the court, relying on *Southeastern Community College,* refused to enforce regulations promulgated under the Rehabilitation Act which required that every mass transit system be made accessible to the handicapped. The court found that these regulations went beyond the scope of the Rehabilitation Act because they imposed affirmative action requirements and extraordinary financial burdens on recipients of federal funds.

█ In the present case the thirty-day rule for processing appeals relates to the procedural requirements of the EAHCA. 20 U.S.C. § 1415. Section 1415(e)(3) requires that "[d]uring the pendency of any proceedings conducted pursuant to this section ... the child shall remain in the then current educational placement of such child ...." In light of the substantive right to an "appropriate education" created under the EAHCA, the court believes that this provision requiring maintenance of the *status quo* pending completion of administrative procedures contains an implicit assumption that those procedures will be completed without undue delay. Otherwise, a recipient of EAHCA funds could avoid its substantive obligations and, in effect, render the statute's procedural protections a nullity simply by procrastination. The court thus concludes that the thirty-day rule carries out the provisions of the EAHCA and that defendant has failed to show that it falls outside the commissioner's statutory rule-making authority.[9]

---

9. At least one other court has viewed the thirty-day rule as creating an enforceable duty. *Rettig v. Kent City School District,* 539 F.Supp.

768 (N.D.Ohio 1981). The *Rettig* court ordered the state to revise its rule, allowing the state education agency to render a decision within

Nor has defendant shown, at least in the context of this motion to dismiss, that the thirty-day rule imposes the excessive burden or expense upon the state that was found to exist in *American Public Transit System.* Plaintiffs merely request that an appeal to the state education agency be processed expeditiously. The burden, if any, that would be imposed upon the state does not appear excessive, especially in light of what is at stake.

To summarize, EAHCA does create substantive rights to a free appropriate education, as well as procedural guarantees that state administrative appeals will be processed expeditiously. Administrative regulations under the EAHCA setting time limits on the processing of appeals create enforceable duties. Defendant's motion to dismiss plaintiffs' EAHCA claim is therefore denied.

### THE REHABILITATION ACT CLAIMS

Section 504 of the Rehabilitation Act provides in pertinent part:

"No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ."

29 U.S.C. § 794.

Regulations promulgated pursuant to the Rehabilitation Act [10] tie it to the provision of special educational services and the procedural guarantees of the EAHCA:

A recipient that operates a public elementary or secondary education program shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap.

34 C.F.R. § 104.33(a).

A recipient that operates a public elementary or secondary education program shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons, who, because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parent or guardian and representation by counsel, and a review procedure. Compliance with the procedural safeguards of section 615 of the [EAHCA] is one means of meeting the requirement.

34 C.F.R. § 104.36.

■ Defendant challenges plaintiffs' claim under the Rehabilitation Act on several grounds. First, he asserts that § 504 does not create any substantive rights. However, the majority of courts examining § 504 have held that it creates substantive rights enforceable by way of a private action.[11] Defendant's argument is clearly

---

sixty days, so that it complied with the federal regulation. Because of excessive delays, by the time the plaintiff's case reached the court the record was outdated. The court stated that this placed it in the uncomfortable position of reviewing an education program that was irrelevant by the time it reached the court. *Id.* at 511. This court believes that the enforceability of the thirty-day rule is more properly premised on the underlying substantive right of handicapped children to an appropriate education than on the needs of the judiciary.

10. The Rehabilitation Act contains no express authorization to issue regulations. However, Executive Order 11914, 41 F.R. 17871 (April 29, 1976), which was clearly contemplated by the legislative history of the Act, provides such authorization. *See Lloyd v. Regional Transp. Auth.,* 548 F.2d 1277, 1281 and n. 15 (7th Cir. 1977).

11. *Kling v. County of Los Angeles,* 633 F.2d 876 (9th Cir.1980); *Tatro v. State of Texas,* 625 F.2d 557 (5th Cir.1980); *Camenisch v. University of Texas,* 616 F.2d 127 (5th Cir.1980), *vacated on other grounds,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981); *NAACP v. The Medical Center, Inc.,* 599 F.2d 1247 (3d Cir. 1979); *Leary v. Crapsey,* 566 F.2d 863 (2d Cir. 1977); *United Handicapped Federation v. Andre,* 558 F.2d 413 (8th Cir.1977); *Kampmeier v. Nyquist,* 553 F.2d 296 (2d Cir.1977); *Department of Education v. Katherine D.,* 531 F.Supp. 517 (D.Hawaii 1982); *Gladys J. v. Pearland Independent School District,* 520 F.Supp. 869

foreclosed, at least in this circuit, by *Lloyd v. Regional Transportation Authority,* 548 F.2d 1277 (7th Cir.1977), in which the court held that affirmative rights were created under the Rehabilitation Act. The court based its holding on the Rehabilitation Act's similarity to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, which was construed in *Lau v. Nichols,* 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974) as creating affirmative rights.

The *Lloyd* decision requires a finding that the Rehabilitation Act grants handicapped children such as plaintiff John A. substantive rights in the educational context. Just what those substantive rights are is a more difficult question. In *McCowan v. Hahn, supra,* the court held that the simple failure to provide special education services does not of itself state a claim under § 504. Judge Getzendanner went on to find, however, that expulsion from an educational program for disciplinary reasons related to a student's handicap without providing for special education services may constitute a violation of § 504. *Id.* at 18–19.

In *William S. v. Gill, supra,* the court concluded that a school district's refusal to fund a residential placement in connection with an educational program stated a claim under § 504. Judge Shadur said

Only one element of a Section 504 cause of action may be disputed here: whether [plaintiff] has been excluded from or denied the benefits of EAHCA "solely by virtue of his handicap". That nexus is plain. Plaintiff alleges he has been effectively denied any education at all because the state refuses to fund "related services," a precondition to his ability to learn. [Plaintiff's] need is, of course, solely a result of the severity of his handicap. Whatever causal link need be established between harm and handicap under Section 504, it is present here.

536 F.Supp. at 511. The court rejected the Supreme Court's decision in *Southeastern Community College v. Davis, supra,* as irrelevant, finding that *Southeastern* held only that "Section 504 did not compel affirmative action in the sense of extensive modifications of a nursing program to overcome plaintiff's deafness." *Id.*[12]

 This court believes that, at a minimum, § 504 requires a state which receives federal funds for public education not to exclude a handicapped child from its educational program for reasons related solely to his handicap. Exclusion in the educational context must mean, as Judge Shadur suggested, any decision or action that, in practice, prevents a child from benefitting from the federally-funded educational program. Here, plaintiffs have alleged that defendant's inaction in failing to process appeals relating to the educational placements of handicapped children deprived them of the benefits of an education. Just as the defendant's refusal to fund related services in *William S. v. Gill* deprived the plaintiff there of a "precondition to his ability to learn [which was] . . . solely the result of the severity of his handicap," defendant's failure here to promptly process appeals which result solely from plaintiff's status as a handicapped child forced plaintiff to remain in an allegedly inappropriate educational placement. The court concludes that plaintiffs have made the necessary causal allegations to state a claim under § 504.

Defendant also argues that plaintiff's reliance upon § 504's implementing regulation, 34 C.F.R. § 104.33, for the proposition

(S.D.Tex.1981); *Georgia Association of Retarded Citizens v. McDaniel,* 511 F.Supp. 1263 (N.D.Ga.1981); *Larry P. v. Riles,* 495 F.Supp. 926 (N.D.Calif.1979); *Boxall v. Sequoia Union High School District,* 464 F.Supp. 1104 (N.D. Calif.1979).

**12.** One court has given an even narrower interpretation of the *Southeastern* holding. In *Camenisch v. University of Texas,* 616 F.2d 127 (5th Cir.1980), *vacated on other grounds,* 451 U.S.

390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), the Fifth Circuit read *Southeastern* as holding

only that section 504 does not require a school to provide services to a handicapped individual for a program for which the individual's handicap precludes him from ever realizing the principal benefits of the training.

*Id.* at 133.

that a free appropriate public education must be provided to handicapped children is misplaced. Defendant argues that this regulation exceeds any similar obligation contained in the statute itself. Once again defendant relies upon *Southeastern Community College* and *American Public Transit Association* for the proposition that heavy financial burdens would be placed upon the state education agency.

 The regulation in question, however, merely restates, in affirmative language, the prohibitions of § 504. A recipient of federal funds for elementary and secondary educational services must extend those services to all *qualified* handicapped children regardless of the nature or severity of their handicaps. Clearly, this regulation cannot be said to exceed Section 504's prohibition of discrimination against handicapped individuals. Plaintiffs do not ask this court to interpret the regulation in a broad fashion as in *American Public Transit Association,* nor do plaintiffs seek, as did the plaintiff in the *Southeastern* case, admittance into a program from which they would be unable to reap any benefits. Rather, they simply seek prompt resolution of disputes as to the appropriateness of their educational placements so that they may get on with the schooling to which they are entitled.

 Finally, defendant argues that, even if the Rehabilitation Act creates substantive rights in favor of plaintiffs, the complaint fails to allege the necessary elements of such a cause of action. Defendant correctly maintains that, in order to state a claim under § 504, plaintiff must allege (1) the existence of a program or activity within the state which receives federal financial assistance, (2) that plaintiff is an intended beneficiary of the federal assistance, and (3) that he is a qualified handicapped person, who solely by reason of his handicap has been excluded from participation in, been denied the benefits of or otherwise been subjected to discrimination under such program or activity. *Simpson v. Reynolds Metal Co.,* 629 F.2d 1226 (7th Cir.1980); *William S. v. Gill,* 536 F.Supp. at 511.

Plaintiffs have alleged that Illinois receives federal financial assistance under the EAHCA for special education (¶¶ 1, 3, 5, 8, 9, 20, 21), and that handicapped children are denied such benefits because of defendant's delay in processing appeals brought to the state education agency concerning special education placements. (¶¶ 17 and 18). The elements of a cause of action under the Rehabilitation Act, as outlined in *Simpson v. Reynolds Metal Co., supra,* are alleged in the complaint, and defendant's motion to dismiss must therefore be denied.

## DUE PROCESS CLAIM

 Defendant asserts that the due process clause of the Fourteenth Amendment does not require a decision to be rendered by a state education agency within thirty days after receipt of a request for review. Application of the due process clause to a particular situation involves a two-level inquiry. First, has the complaining party been deprived of some legitimate property or liberty interest? *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Second, if there be such a deprivation, what procedural protections does the due process clause mandate? As the Supreme Court said in *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), due process " 'is not a technical conception with a fixed content unrelated to time, place and circumstances.' " (quoting *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961)). Rather, what process is due depends upon an analysis of the private and governmental interests affected. *Id.* 424 U.S. at 334–35, 96 S.Ct. at 902.

 Defendant has not challenged plaintiffs' due process claim at the first level of inquiry. Plaintiffs have alleged that the handicapped children have been deprived of an appropriate education as a result of defendant's conduct. The court believes that this allegation is sufficient to trigger a due process analysis, whether an appropriate education is viewed as some sort of statutory entitlement under the

EAHCA, *see* discussion *supra* at pp. 7–12; *cf. Goldberg v. Kelly,* 397 U.S. 254, 262 and n. 8, 90 S.Ct. 1011, 1017 and n. 8, 25 L.Ed.2d 287 (1970), or a property right under state law, *see Elliot v. Bd. of Ed. of City of Chicago,* 64 Ill.App.3d 229, 20 Ill.Dec. 928, 932–35, 380 N.E.2d 1137, 1141–44 (1st Dist. 1978) (analyzing state constitutional and statutory provisions for a free education). The question at this stage of the proceedings then is whether the due process clause imposes some kind of timeliness requirement on the state in the course of decision-making regarding the educational placement of handicapped children.

Defendant cannot seriously dispute that the time factor is often a critical component of procedural due process. As indicated in *Goldberg v. Kelly, supra,* the timeliness of a required hearing can, under certain circumstances, be the most critical element of due process guarantees. In *Like v. Carter,* 448 F.2d 798 (8th Cir.1971), the court, relying on *Goldberg,* concluded that state delays of more than thirty days in processing applications for public assistance violated due process. It said, "the need of eligible welfare recipients for prompt relief is urgent and great, and ... eligible applicants are entitled to prompt relief as a matter of right." *Id.* at 804.

Although plaintiffs here do not suffer from deprivation of basic life necessities such as food, clothing and shelter, the time factor may be as critical here as in the welfare context. The provision of educational services is one of the most important functions that the state performs. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). The passage of time while the state resolves disputes concerning educational placements can, as the complaint in this case vividly illustrates, have serious and perhaps irreversible consequences. Plaintiffs have charged that while John remained in an allegedly inappropriate educational placement pending state review, his condition worsened to the point that he had to be institutionalized in a mental health center, a setting that was also inappropriate to his needs. They have alleged that he has been seriously injured as a result of these inappropriate placements and that the passage of time decreases his chances of benefitting from educational services.

It is obvious from these allegations as well as the inherently time-bound nature of a child's right to education that the passage of time can itself constitute a deprivation of the substantive right. Timeliness of review, at least in the face of the pleadings, is thus an essential element of procedural due process in this case. While further factual development may demonstrate that, under the required balancing of private and government interests, the Constitution does not require a final decision within thirty days, the court cannot say that plaintiffs at this point have failed to state a claim. Defendant's motion to dismiss plaintiffs' claim under the due process clause of the Fourteenth Amendment is therefore denied.

PENDENT STATE CLAIM

Defendant seeks dismissal of plaintiffs' state law claim for lack of subject matter jurisdiction, relying on *United Mineworkers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), in which the Court said, "Certainly, if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139. Since dismissal of the state claim is thus dependent upon dismissal of the federal claims, which this court finds unwarranted, defendant's motion to dismiss as to this count is also denied.